# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

**UNITED STATES OF AMERICA,**
     **Appellee**    :    **23-1504**


**V.**        :


**FRANCISCO XAVIER ORTÍZ COLÓN, :**
  **Defendant-Appellant**




On appeal from the United States District Court
for the District of Puerto Rico




BRIEF OF APPELLANT
FRANCISCO ORTÍZ COLÓN

LINDA BACKIEL
First Circuit Bar #8766
Av. Sierra Morena #267
PMB 597
San Juan, Puerto Rico
00926-5583
787-751-4951
lbackielr@gmail.com

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED
FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF  THE CASE AND COURSE
OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT

I.      The  procedures used to create the deliberating jury violated Mr.
        Ortíz' Due Process and Sixth Amendment rights to fair trial before an
        impartial jury, and  his statutory rights under rules 24(b) and 43. . . . . . . . 16

II.     Mr. Ortíz' right to be tried by the jury of his choosing, and to
        be present and represented violated by the summary excusal of jurors
        without consultation with counsel.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.    Overview testimony from agents exceeded their expertise and
        violated due process.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.     The district court's response to jury questions violated the Sixth
        A amendment right to fair trial and Fifth Amendment rights to
        remain silent and the presumption of innocence. . . . . . . . . . . . . . . . . . . . 39

V.      Sentences imposed for receipt and possession of child pornography,
        as well as 18 U.S.C. §2251(a) and §2422(b) violated the Double
        Jeopardy clause when the instructions made the former an element
        of the latter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

VI.     The thirty year sentence is substantively  unreasonable. . . . . . . . . . . . . . . 57

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

CERTIFICATES OF SERVICE
     AND COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

ADDENDUM

Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-1

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-9

Instructions 17-20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-10

Superseding Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-20

# TABLE OF AUTHORITIES

**Authority**                                                                  **Pages**

**UNITED STATES CONSTITUTION**

Fifth Amendment, Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

Double Jeopardy Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

Sixth Amendment, Fair Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*
Right to be present . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

**CASES**

*Allen v. Att'y Gen. of Me.*,
80 F.3d 569 (1st Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Atkins v. Virginia*,
536 U.S. 304 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Blockburger v. United States*,
284 U.S. 299 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Brown v. Ohio*,
432 U.S. 161 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Glasser v. United States*,
315 US 60 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ham v. South Carolina*,
409 U. S. 524 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Holguin-Hernandez v. United States*,
___ U.S. ___140 S. Ct. 762
206 L.Ed.2d 95 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*Irvin v. Dowd,*
366 U.S. 717 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Koon v. United States,*
518 U. S. 81 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*Murphy v. Florida,*
421 U.S. 792 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*North Carolina v. Pearce,*
395 U. S. 711 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Olszewski v. Spencer,*
466 F. 3d 47 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ray v. United States,*
481 US 736 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Reynolds v. United States,*
98 US 145 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ristaino v. Ross,*
424 US 589 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rosales-Lopez v. United States,*
451 U.S. 182 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rushen v. Spain,*
464 U.S. 114 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rutledge v. United States,*
517 U.S. 292 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 55

*Sampson v. United States,*
724 F. 3d 150 (1ˢᵗ Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Turner v. Murray,*
476 US 28 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Ajmal,*
  67 F.2d 12 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Ball,*
  470 U.S. 856 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Blitch,*
  622 F. 3d 685 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Brockman,*
  183 F.3d 891 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Brown,*
  701 F. 3d 120 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Bryner,*
  392 F. App'x 68 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *52*

*United States v. Bush,*
  47 F. 3d 511 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Casas,*
  356 F. 3d 104 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, *passim*

*United States v. Cassiere*
  13 F.4th 1006 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Catalan-Roman,*
  585 F. 3d 453 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Chiaradio,*
  684 F. 3d 265 (1st Cir. 2012*)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Chorney,*
  63 F. 3d 78 (1st Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Colón-Cordero,*
  91 F.4th 50 (1st Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*United States v. Cunningham,*
    07-cr-298 (W.D. Pa.) 2007 (DKT 137),
    694 F. 3d 372 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*DeBenedetto v. Goodyear Tire & Rubber Co.,*
    754 F. 2d 512 (4ᵗʰ Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40

*United States v. Davenport,*
    519 F.3d 940 (9ᵗʰ Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Dellinger,* 472 F.2d 340
    (7th Cir.1972), *cert. denied,* 410 U.S. 970 (1973) . . . . . . . . . . . . . . . . . . . 18

*United States v. Dwinells,*
    508 F. 3d 63 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Ehle,*
    640 F.3d 689 (6th Cir.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Flores-De-Jesús,*
    569 F. 3d 8 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, *passim*

*United States v. Franik,*
    687 F.3d 988(8ᵗʰ Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

*United States v. González Meléndez,*
    594 F.3d 28 (1ˢᵗ Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, *passim*

*United States v. Grober,*
    595 F.Supp.2d. 382 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*United States v. Grober,*
    624 F.3d 592 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*United States v. Henderson,*
    649 F.3d 955 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States v . Hernández,*
  76 F.3d 719 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. Irizarry-Sisco,*
  87 F. 4th 38 (1st Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Jorn,*
  400 US 470 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Kamen,*
  491 F. Supp. 2d 142 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Kaplan,*
  490 F.3d 110 (2d Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Kornegay,*
  410 F.3d 89 (1st Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Maraj,*
  947 F.2d 520 (1st Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Martinez-Salazar,*
  528 U.S. 304 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Medina-Villegas,*
  700 F. 3d 580 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Meises,*
  45 F. 3d 5 (1st Cir.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v Millán-Machuca,*
  991 F.3d 7 (1st Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Miller,*
  527 F. 3d 54 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 55

*United States v. Molinares Charris,*
  822 F.2d 1213 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 28

*United States v. Montijo-Maysonet*,
　　974 F. 3d 34 (1st Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Muhlenbruch*,
　　634 F.3d 987 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Olano*,
　　507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 47

*United States v. Pérez-Rodríguez*,
　　13 F. 4th 1 (1st Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25

*United States v. Pires*,
　　642 F. 3d 1 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 55

*United States v. Rawlings*,
　　522 F. 3d 403 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Robinson*,
　　475 F.2d 376 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Rosado-Pérez*,
　　605 F.3d 48 (1st Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Sansone*,
　　90 F.4th 1(1st Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*United States v. Schales*,
　　546 F.3d 965 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Simtob*,
　　485 F.3d 1058 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Smith*,
　　31 F.3d 469 (7th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Stefanidakis*,
 678 F. 3d 96 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Sutton*,
 970 F. 2d 1001 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

*United States v. Takesian*,
 945 F. 3d 553 (1st Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*United States v. Taylor*,
 640 F. 3d 255 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Valdivia*,
 680 F. 3d 33 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Vázquez-Rivera*,
 665 F.3d 351 (1st Cir.2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Villar*,
 586 F. 3d 76 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

*United States v. Walsh*,
 75 F. 3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. West*,
 458 F.3d 1 (D.C.Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

*United States v. Zuk*,
 874 F.3d 398 (4th Cir.2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

**STATUTES**

18 U.S.C. §2422(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

18 §2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

18 U.S.C. §2252A(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

18 U.S.C. § 2252A(a)(5)(B)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, *passim*

18 U.S.C. §3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, *passim*

18 U.S.C. §3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES**

**Federal Rules of Criminal Procedure**

Rule 24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Rule 43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 29

**Federal Rules of Evidence**

Rule 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Rule 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Rule 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Rule 611(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Rule 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## United States Sentencing Guidelines

USSG §2G2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58, 62

## Other Authorities

Arain M, Haque M, Johal L, Mathur P, Nel W,
Rais A, Sandhu R, Sharma S.
*Maturation of the adolescent brain*.
NEUROPSYCHIATR. DIS TREAT. 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Baron-Cohen, S. & Wheelwright, S. J.
*The Empathy Quotient: an investigation of*
*adults with Asperger syndrome or high functioning*
*autism, and normal sex differences*,
 J. AUTISM DEV. DISORD. 34, 163–175 (2004). . . . . . . . . . . . . . . . . . . . . . 60

Jeanette Kennett,
*Autism, Empathy and Moral Agency*,
THE PHILOSOPHICAL QUARTERLY,
VOLUME 52, ISSUE 208, July 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Jones AP, Happé FG, Gilbert F, Burnett S, Viding E.
*Feeling, caring, knowing: different types of empathy*
*deficit in boys with psychopathic tendencies and autism*
*spectrum disorder*.
J CHILD PSYCHOL PSYCHIATRY. 2010 Nov;51(11) . . . . . . . . . . . . . . . . . . 60

Stephan Landsman, *A Brief Survey of the*
*Development of the Adversary System*,
44 OHIO ST. L.J. 713 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Troy Stabenow,
*Deconstructing the Myth of Careful Study:*
*A Primer on the Flawed Progression of the*
*Child Pornography Guidelines* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Melinda Wenner Moyer,

*Autistic Sex Offenders Often Don't Realize*
*They've Broken the Law: Should that Matter*?
Slate, 7/18/19 . . . . . . . . . . . . . . 60United States Sentencing Commission,
*Federal Sentencing of Child Pornography:*
*Production Offenses*, October 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

United States Sentencing Commission,
*Federal Sentencing of Child Pornography*
*Non-production Offenses,* June 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

# STATEMENT OF JURISDICTION

This is an appeal from the conviction and sentence imposed in the District of Puerto Rico, following trial before a jury and the Hon. Raúl Arias Marxuach. Sentence was imposed on May 23, 2023, and Judgment entered on that date. A copy of the Judgment (DKT 206) appears at pages 1-8 of Appellant's Addendum ("AD-")[1]. The Docket appears as at pages 1-20 of the Appendix (hereinafter "APP-"). A timely Notice of Appeal was filed on May 30,2023. DKT # 208 (AD-9). This Court has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

---

[1] The following abbreviations are used: "AD-#" refers to the page number of the Addendum, "APP-#" refers to a page number of the Appellant's Appendix, and "Sealed APP-#, of Appellant's Sealed Appendix. "DKT#" refers to the number assigned to a document in the district court's electronic docket.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I. Were Mr. Ortíz' Due Process and Sixth Amendment rights to a fair trial before an unbiased jury, and to intelligent exercise of peremptory challenges violated when voir dire was grossly inadequate to detect disqualifying prejudice and bias in relation to child pornography and the role of law enforcement witnesses?

II. Was his right to be tried by the jury of his choosing, and to be present and represented violated by the summary excuse of jurors without consultation with counsel?

III. Did overview testimony from agents presented as experts cumulatively violate his Fifth and Sixth Amendment rights to Due Process and a Fair Trial and result in a conviction on a count for which there was no evidence?

IV. Did the district court's failure to heed the warnings of *United States v. Sutton*, 970 F. 2d 1001, 1005 (1st Cir. 1992), culminating in the contamination of the entire jury with one juror's desire to convict without hearing all the evidence, and to hear from Mr. Ortíz, violate his Fifth and Sixth Amendment rights to Due Process and a Fair Trial?

V. Did sentences imposed for receipt and possession of child pornography, as well as 18 U.S.C. §2251(a) and §2422(b) violate the Double Jeopardy Clause when the instructions made the former an element of the latter?

VI. Is the imposition of the same sentence recently imposed on the man who bludgeoned the husband of the former Speaker of the House unreasonable when imposed on this young man with acknowledged neurological, educational and social disabilities convicted of non-contact child pornography offenses?

## STATEMENT OF THE CASE
## AND COURSE OF THE PROCEEDINGS

On the late afternoon of June 10, 2021, local and HSI Agents executed a search warrant at Mr. Ortíz' grandmother's house, where he lived. He was 23 at the time. Also present was an adolescent male family member who was using Play Station or Xbox in a back room, about whom nothing more was said. APP-162, 166, DKT 213 at 144, 146.

They found Mr. Ortíz standing in the garage, still in his work uniform. Agent Tirado extracted from the uniform pocket a Samsung telephone. During a back-seat-of-the-police car-interview, Mr. Ortíz admitted his former and current address, that he was the sole user of the Samsung, his telephone number and an Instagram account with his middle name, Xavier. APP-339, DKT 204 at 61.

From the second floor unit where Mr. Ortíz lived with his wife and baby, an LG brand wireless track phone, a bunch of non-working phones and assorted electronics were also recovered. Only the Samsung and LG produced evidence. Agents presented their "findings" from the Samsung in Exhibit 7, those from the LG, Exhibit 8. A DVD of Instagram records and posts derived from the accounts on the phones became Exhibit 20. Selections from the DVDs were displayed and narrated by the agents. Some of the chats were read aloud by the prosecutor and an agent or victim during trial. The DVDs themselves were sent to the jury room.

Business records confirmed Mr. Ortíz' relation to the phones and accounts in question. Six of the participants in the chats identified as Victims 1-9 in the indictment testified, and the parents of three.

The nineteen count superseding indictment (DKT 57, AD 20-39) is structured as follows: one charge of production of child pornography (18 U.S.C. 2251(a) and (e)) and one of enticement (18 U.S.C. 2422(b)(2)) is lodged for each of eight minors. For one (AMR)(Count 7), only production is charged. Counts 12-13 charged receipt and possession of child pornography (18 U.S.C. §§2252A(a)(2) and 2252A(a)(5)(B)) during a period spanning the earliest and latest dates of all the other counts.[2]

Six days before the scheduled change of plea or pretrial conference, trial counsel moved to dismiss the indictment "for lack of *mens rea*". DKT 103.[3] *And see* DKTs 62, 70, 75 (relating to "Motion for Order of Competency to Stand Trial". This restricted filing included, as an attachment, the report of a clinical neuropsychologist establishing that Mr. Ortíz suffered borderline intellectual

---

[2] The complete statutes and rules relevant to this appeal are reproduced in a separate "Rules and Statutes" pamphlet.

[3] Respectful of this Court's established policy of not considering issues of ineffective assistance of counsel of direct appeal *(United States v. Santana-Dones*, 920 F. 3d 70, 81 (1st Cir. 2019), and their fact-dependent nature, it is not raised here.

functioning, with academic skills ranging from 3rd to 7th grade level as the result of specific learning disorder and mild cognitive impairment. His social and communication skills are poor. DKT 103-1, at pp. 10, 13 (Sealed Appendix at 37-53). However rudimentary his understanding of the proceedings, he was deemed competent to proceed with adequate orientation from counsel. The motion was appropriately denied for failure to state any basis for dismissal. DKT 116.

Three weeks after the deadline for announcing whether the defendant would plead or proceed to trial had passed without a word, a date was set for trial and pretrial conference. DKTs 118, 119. The Court granted a prosecution motion for a "*Frye/Laffler*" hearing at which the prosecutor announced that an offer to plead to nine counts had been tendered and rejected. The prosecutor mentioned a recommended sentence within GSR 38 which, given his lack of criminal history, would mean a sentence of 235-293 months. Without agreement, she stated, the GSR would be 30 years to life.[4] Mr. Ortíz Colón provided the appropriate monosyllabic answers, occasionally repeating the language of the Court's questions confirming that he would go to trial. APP 542-552, DKT 219 at 2-12.

Trial began on November 1. Five law enforcement agents, six victims and

---

[4] The PSR calculated a level 50, reduced to 43, with no range other than the rest of the defendant's life. PSR (DKT 200, Sealed APP 1-36 ).

the parents of two testified, with closing argument, instructions and deliberations starting after lunch a week later. The jury verdict of guilty on all 19 counts was returned the following day, after four substantive notes, one asking to excuse two jurors and one signaling exhaustion of all.

Mr. Ortíz was immediately remanded following denial of a perfunctory renewal of earlier motions under Rule 29, Fed. R. Crim. Proc. APP 518, DKT 217 at 16. Relevant jury notes appear at APP 525-540.

A Rule 29(c), Fed.R. Crim.Proc. Motion (DKT 180), recapitulated the theory, rejected by the jury and thrice denied by the court –*i.e*, that no one could identify Mr. Ortíz as the face behind the chats. *See*, DKT 215 at 75-86, DKT 217 at 16. It was denied. DKT 192.

New counsel filed a three-page sentencing memorandum (DKT 203) arguing that the mandatory minimum (15 years) was adequate under 18 U.S.C. §3553, citing the  mental and physical conditions revealed in Dra. Margarida's report. No objections were filed. On May 23, 2023, the Hon. Raúl Árias Marxuach sentenced Mr. Ortíz to the 360 months on each of the production and coercion counts, and the statutory maximum of 240 months on the receipt and possession counts (12 and 13) all to be served concurrently, followed by 10 years supervised release. The SMA totaled $1,900.00.  The Judgment (DKT 206) is found at AD 1-8, the

transcript of the sentencing hearing, at DKT 218, 1-30.

First, what this case is not about: it is not about contact, none was ever suggested. The person soliciting the images prized anonymity and distance. Nor is it about profit. Although passed off as a business, the sites offered to pay, not to charge, and offered nothing for sale. A single in-person text exchange with a coworker, who initiated it by sending Mr. Ortíz adult pornography was as close as he came to distribution.

The documentary evidence consisted of texts, chats and images solicited by the operator of Instagram accounts sharing the word "*axilas*"("underarms") in their names that offered modest payment for photographs of female underarms. Once an adolescent girl responded, more revealing photos were demanded, on pain of revealing them to others. Some of the texts include graphic directions about how to photograph the most intimate parts of a girl's body and the results are clearly, disgustingly, pornographic.

Following chain of custody and general testimony about the contents of Exhibits 7 and 8 from other law enforcement agents, Case Agent Elizabeth de Jesús described her investigation and interviews of victims. Her 109 pages of testimony walked the jury through the documentary evidence.

Three victims testified on each of the following two days, as did two

mothers, identifying chats and/or photos sent to one an *axilas* site. None of them identified Mr. Ortíz, but the exhibits obtained from service providers and the devices themselves established that the passwords and recovery numbers for the Samsung, *axilas* accounts, and Mr. Ortíz Colón's email cross-referenced each other, used his first and/or middle names or date of birth, and the IPs of the router at his residence. *See*, Exhibits12, 13, 16, 18, 19. *See, e.g.*, APP 339-349, DKT 204 at 62-72.

In addition, a co-worker testified that Mr. Ortíz sent him images of the four of the adolescents identified in Counts 5-6 ("DAR") , 14-15 (CAR), 16-17 (VOM) and 18-19 (ASR) via WhatsApp. DKT 218 a 81-91.

The testimony

The first witness, SFG (not a victim), intervened to tell the "*axilas*" person to stop threatening her friend  KMC (the subject of Counts 1 - 2), a 7th grade schoolmate whose nude photo was circulating in a group chat in which, the two of them and two other schoolmates (APR and ACM) also participated. DKT 213 at 107-130, APP 127-150.

The prosecutor and SFG gave a dramatic reading of her spunky chat with the *axilas* operator in which she asked him to stop harassing her friend and he said essentially, only on condition that she help him recruit others. APP at 134-144,

DKT 213 at 114-124. Because she "did not like it" and did not know him, SFG sensibly refused to play the game, and handed the phone to her father, who blocked the site. APP 144-145. DKT 213 at 124-125.

Over the next two days agents Medina, Tirado, Wilkins, Segarra and De Jesús testified. First. about the recovery of the phones and chats from Mr. Ortíz' accounts. The last three, as experts. Wilkins and Segarra described their responsibility for the Cellebrite extractions performed on the two telephones seized from Mr. Ortíz Colón. Wilkins, based in Miami, did nothing but plug the Samsung into a Cellebrite program, put the extraction results on a flash drive, and send it to San Juan. APP 181-202, DKT 201, 12-33. Segarra extracted the unprotected LG, and took the jury through a guided tour of contents selected by the prosecutor. APP 203-298, DKT 201 at 35- DKT 204 at 20. Their testimony, and that of Agent De Jesús, is discussed in detail in the "Overview" section of this brief.

Case Agent De Jesús, received as an expert in child pornography, described her investigation,  the fruit of her interviews the minors she identified as: ARR[5], KDR, CAR, VOM and ASR). CAR, ASR and AMR did not testify. Her testimony

_____

[5] Agent de Jesús testified about "ARR". DKT 204 at 55, 56, APP 333, 334, No ARR is identified in the indictment. There is an AMR (Count 7) as well as an ASR (Counts 8-10). There is no testimony about AMR in the transcript. No ARR or AMR testified.

appears at APP 301-407, DKT 204 at 23-129.

On the fourth and fifth days of trial three members of the chat group mentioned by SFG (KMC, APR, and ACM) testified about their own interactions with an "*axilas*" account during which each initially submitted underarm images and were bullied into providing more revealing ones in order to keep those they had provided private. The chats make clear that images of vaginas were demanded and supplied. See, testimonies of KMC (DKT 214 at 9-10), ACM ( DKT 214 at 40), APR (DKT 214 at 64).

Jovanna Rodríguez was  a police officer and the mother of a daughter she identified as "ANPR" [6] (DKT 214 At 72 ), who was eleven when she interacted with an *axilas* account. The mother and the prosecutor gave a dramatic reading of the her chat with the site. Her daughter did not testify.

 José Alberto Hernández Díaz, testified that while at work, he and Mr. Ortíz exchanged pornographic images. Those sent by Mr. Ortíz were cited by the prosecutor in closing as representing DAR, CAR, VOM, and SAR.[7]

On the fifth and final day of testimony, KDR (DKT 215 at 5-12), her mother

---

[6]  The indictment identifies no one by that name. Counts 2-3 identify an "APR", and Count 7 an "AMR".

[7] The indictment identifies no SAR.  In addition to APR and AMR, an ASR is identified in Counts 18 and 19. *See and compare*, DKT 214 at 84-85 and APP 468, DKT 216 at 58.

(DKT 215 at 13-18), DAR (DKT 215 at 18-48) and VOM (DKT 215 at 55-74) testified. These initials correspond to Counts 10-11, 5-6, 16-17), respectively. DAR also testified about a younger sister, ADMRR.[8] (DKT 215 at 3347).

Shortly after the testimony of DAR quoting instructions from an *axilas* site about how to masturbate, and a scheme to get her to photograph her 9 year old sister's vagina, one juror announced, via note to the court, that "there was plenty of evidence" to convict on all charges, and demanded to hear from Mr. Ortíz. See discussion below. One more witness (VOM) was presented (masturbation image demanded), and both parties rested after the Court questioned Mr. Ortíz, who he confirmed that he would not to testify.

<u>The final stage</u>

Perfunctory Rule 29 motions, based exclusively on the alleged failure to prove that Mr. Ortíz was the author of the chats, were raised and denied at appropriate moments.

Instructions were imparted on November 8, DKT 216. No objection was made to any. The jury was sent to deliberate at 12:19 and beginning at 1:30, sent six notes in rapid succession, requesting both specific items of evidence and all

---

[8] The indictment identifies no one by that name. Count 7 identifies an "AMR".

evidence "uncensored", asking if two jurors could "abstence to make the vote" (a)) 533, Note #23, DKT167 at p. 6). They were told to continue deliberating if not hopelessly deadlocked. The next request at 4:07, was to be excused for the day as several felt "extremely drained." App-534, Note #24, DKT 167 at p. 7. Deliberations continued on the next and final day, producing notes regarding the location of specific pieces of evidence relating to DAR, AMR and KDR answered jointly before noon. It was followed by one more, seeking additional photos of AMR (APP-535 DKT 170 at p. 1), followed by a verdict of guilty on all 19 counts.

### Sentencing

No objections were filed to a Presentence Report (DKT 200, Sealed APP 1-36) with an over-the-top of the Guidelines range of 50. At the hearing, the defense requested 15 years, the prosecution, life. The Hon. Raúl Arias Marxuach imposed a variant sentence of 30/20 years concurrent, followed by ten years of supervised release.

## SUMMARY OF THE ARGUMENT

In a case which required jurors to scrutinize images to decide whether they displayed sexually explicit conduct, and law enforcement expert opinion on that issue predominated, perfunctory *voir dire* was grossly inadequate to detect disqualifying prejudice and bias relating to both issues, and to permit the intelligent exercise of peremptory challenges.

The summary dismissal of three jurors during trial, one apparently by a clerk, without consulting counsel or record showing of inability to serve violated Rule 43 and the Sixth Amendment. *United States v. Molinares Charris*, 822 F.2d 1213, 1223(1st Cir. 1987); *United States v. Chorney*, 63 F.3d 78, 81 (1st Cir. 1995); *United States v. González Meléndez*, 594 F.3d 28 (1st Cir. 2010).

Mr. Ortíz' Fifth Amendment right to Due Process and this Court's rule against unfairly prejudicial overview testimony was violated by the "progress of the investigation" and summary of the evidence presented by law enforcement agents presented as experts as condemned in *United States v. Casas*, 356 F. 3d 104, 120 (1st Cir. 2003); *United States v. Flores-De-Jesús*, 569 F. 3d 8 (1st Cir. 2009). It produced, among other things, at least one conviction for which there was no evidence (Count 7).

Mr. Ortíz' Due Process rights to fair trial and the presumption of innocence

were violated by the District Court's failure to heed the warnings of *United States v. Sutton*, 970 F. 2d 1001, 1005 (1st Cir. 1992) and progeny in response to multiple pre-deliberation questions from the jury that revealed prejudice and premature deliberations. The anondyne instructions that accompanied the Court's reading to the entire jury a note pronouncing one juror's desire to convict without hearing any more evidence, and asking to hear from Mr. Ortíz, were clearly inadequate.

Instructions making violation of 18 USC §2251(a) an element of §2422(b) resulted in a violation of the prohibition against Double Jeopardy, as did conviction for receipt and possession of the same images.

The thirty-year sentence for this young man without considering the role of his youth, intellectual, educational and social deficits in these offenses is clearly unreasonable.

## ARGUMENT

I.  THE PROCEDURES USED TO CREATE THE DELIBERATING JURY VIOLATED MR. ORTÍZ DUE PROCESS AND SIXTH AMENDMENT RIGHTS TO FAIR TRIAL BEFORE AN IMPARTIAL JURY, AND HIS STATUTORY RIGHTS UNDER RULES 24(b) AND 43.

*Standard of review*

Because throughout this trial, virtually no appropriate objections were raised, the plain error standard of review applies. *United States v. Olano*, 507 U.S. 725, 732-33 (1993) explained, in the context of a violation of Rule 24(c). Fed.R. Crim. Proc., that for an unpreserved non-constitutional error to be recognized under Fed. R. 52(b), an appellant to show: (1) that an error (defined as "[d]eviation from a legal rule") occurred (2) which is clear or obvious from the appellate record, (3) that both affected substantial rights, and (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.

Clear means not "open to doubt or question". The third prong means that "it is reasonably probable that the ... error affected the result of the [specific] proceedings," while the fourth reflects the "fundamental concern with the public legitimacy of our justice system, which relies on procedures that are "neutral, accurate, consistent, trustworthy, and fair." *United States v. Pérez-Rodríguez*, 13 F. 4th 1, 16 (1st Cir. 2021)(cleaned up).

<u>The Law</u>

The constitutional guarantee of the right to a "fair trial by a panel of impartial, `indifferent' jurors" is the cornerstone of due process. The failure to provide it violates its most minimal standards. *Irvin v. Dowd*, 366 U.S. 717, 722,(1961) (internal citations omitted); *Reynolds v. United States*, 98 US 145, 153 (1879); *Ristaino v. Ross*, 424 US 589, 596 (1976). A "jury capable and willing to decide the case solely on the evidence before it" is essential to satisfy a defendant's right to due process under the Fifth Amendment, and to a trial by an impartial jury as guaranteed by the Sixth." *United States v. Villar*, 586 F. 3d 76, 84 (1st Cir. 2009).

"*Voir dire* is "a singularly important means of safeguarding the right to an impartial jury. A probing voir dire examination is the best way to ensure that jurors do not harbor biases for or against the parties." *Sampson v. United States*, 724 F. 3d 150, 164 (1st Cir. 2013)(cleaned up)(remedy for juror dishonesty). It

> plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled."

*Rosales Lopez v. United States*, 451 U. S. 182, 188 (1981)(plurality opinion);

*Dennis v. United States*, 339 U.S. 162, 16, (1950) ("the trial court has a serious

duty to determine the question of actual bias"); *United States v. Dellinger*, 472 F.2d 340, 367 (7th Cir.1972), *cert. denied*, 410 U.S. 970 (1973)) (reversing for failure to provide "a reasonable assurance that [juror] prejudice would be discovered if present").

The "right to an impartial jury carries with it the concomitant right to take reasonable steps designed to insure that the jury is impartial." *Ham v. South Carolina*, 409 U. S. 524, 532 (1973) (Marshall, J. concurring in part and dissenting in part)."Reasonable steps" require eliciting sufficient information relevant to case-specific factors predictably capable of affecting impartiality in that case.  Voir dire "cannot be exercised meaningfully or effectively unless counsel has sufficient information with which to evaluate members of the venire." *Turner v. Murray*, 476 US 28, 40 (1986)(Justice Brennan, concurring in part, dissenting in part).

In addition to being essential to the exercise of challenges for cause, voir dire also serves the purpose of assisting counsel in the exercise of peremptory challenges. *Mu'Mín v. Virginia*, 415, 431 (1991); *Rosales-Lopez v. United States*, 451 U.S. 182 (1981). "Without knowledge bearing on the qualifications of the veniremen, neither function can be performed intelligently." *United States v. West*, 458 F.3d 1, D.C.Cir. 2006 (Garland, J.) (Quoting *United States v. Peterson*, 483 F.2d 1222, 1226-27 (D.C.Cir. 1973). While not themselves of constitutional dimension, they are ancillary to and help secure the constitutional guarantee of trial

by an impartial jury. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).

<u>The procedure below</u>

First, the entire venire was asked to volunteer information about its familiarity with or views related to witnesses or evidence likely to be presented. No witness list was read. Jurors who raised a hand were questioned at sidebar. All of those who volunteered were removed for cause without controversy.[9] The remaining prospective jurors were then asked to recite their answers to minimal demographic questions written on a card. The judge occasionally asked for some additional detail. The skeletal facts known at the end of that process were all the defense knew about the prospective jurors.

*Nature of the Offense*

Three questions were asked:(1) would the mere fact that the defendant had been charged with *sex offenses* mean that he is most likely guilty, (2) would " the nature of the case" make it difficult "to try to issue a verdict fairly and impartial without any prejudice or bias?"and (3) would the fact that "*nude images* of what the Government alleges constitutes child pornography *may be shown* preclude impartiality. APP-34, DKT 213 at 12.

This was not a case about generic "sex offenses" (APP-32 DKT 213 at 12),

---

[9] The record is mute with respect to how hardship excuses were determined. No questions were asked during voir dire, and no questionnaire was used.

and "*nude images* of what the Government alleges constitutes child pornography," (APP-14, DKT 213 at 14) were presented as as a mere theoretical possibility. They were the heart of this case. Even without knowing that they would be required to distinguish between images of nudity and those that were "sexually explicit", six jurors declared themselves incapable of fairness and were excused.

The defense-proposed an open-ended question about "how comfortable you would feel" (*see* DKT 140, Questions (11-13, 15) about viewing such images was more likely to produce a relevant response, and did not require a juror to publicly her or himself incapable of fairness. Appellee will argue that the fault lies with Mr. Ortíz' counsel for not doing more. The district court rejected a more focused question proposed by the defense. Defense counsel breached procedural rules by neither objecting nor asking for additional questions, but, the issue not blame; it whether "the public confidence in the equity of our system of justice". *United States v. Villar*, *supra* at 85 (1st Cir. 2009) can stand behind what happened here.

The Court's acknowledgment that the images *may be unpleasant to view*", with a stiff warning that unpleasantness was no reason to shirk civic duty was not calculated to encourage candor. APP at 34 DKT 213 at 14.

The kind of self-evaluation required of the judge's question collapses two separate questions into one. How a juror would feel looking at images of minors to determine whether they were pornographic is a significant question. Whether that

feeling, when prejudicial, could be overcome is a separate one.

Given the nature of the evidence here, delicacy disserved fairness. When the nature of the charges requires epeated viewing of repulsive images and chats, limiting questions to bland euphemism defeats the purpose of *voir dire*. Jurors could not meaningfully say how reviewing photos of penises, vaginas and vulvas, messages instructing girls how to masturbate or produce those photographs would affect their impartiality unless they had some idea that what was coming was more than "nude images" of purported minors.

There is no formula, but other courts have warned, for example "you will be [exposed to]. . . graphic images, and hear descriptions . . . including graphic and offensive file names which will certainly be disturbing to most, if not all of you..." (used in *United States v. Cunningham*, 2:07-cr-298 (W.D. Pa.) 2007 (DKT 137), on appeal, 694 F. 3d 372 (3d Cir. 2012).

The rejection of the defense request for a bland "kitchen sink" question ("any reason that you could not fairly and impartially view a case involving child pornography (DKT 140, Question 15) deprived those who either did not want, or could not bring themselves to answer previously asked questions in the affirmative to do so on further reflection. *See, United States v. West*, *supra* at 4 (Garland, J.)(criticizing compound questions such as 1 and 3 above, commending an "any reason you can think of" question as saving the day).

Even if no juror responded with disqualifying prejudice, questions more closely focused on the nature of the evidence, and any ensuing dialogue, would have at least permitted intelligent, rather than blind use of peremptory challenges.

*Law Enforcement*

Six hands were raised in response to the question about jurors' relation to law enforcement. APP-41-44, DKT 213 at 21-24. Juror #48 was a retired Inspector at the Puerto Rico Police Department who solemnly declared that his life's career would present "no problem" with his ability to follow the law and be fair. APP 42, TR 213 at 22. Due to his number, this juror was not reached, but the late father of seated Juror #6 (APP-44, DKT 213 at 44 and DKT 155 at p. 1, Sealed APP at 54) had served for most of his life in the same high-ranking post, and his sister was currently a PRPD officer. His answer echoed that of the retired Inspector. APP-44 DKT 213 at 44. There was no follow-up. The juror did not know that the bulk of the testimony would come from law enforcement agents, including the mother of one of the victims was also a PRPD officer. No witness list was read to the venire.

The mother of seated Juror #1 worked at Puerto Rico's Department of Justice in the Criminal Investigation Division as a translator APP-43, DKT 213 at 23), and the sister of seated Juror #3 worked for CBP (APP-41-42, DKT 213 at 21-22) where Agent Wilkins had worked for two decades before moving to its parent agency, HSI. APP-181, DKT 201 at 12.

Not one of the 58 venirepersons confessed a tendency to weigh the credibility of law enforcement differently from that of any other witness. APP 44-45, DKT 213 at 24-25. Nor did it know that five of the prosecution witnesses would be law enforcement officers currently or formerly employed by HSI, CPB, the Police of Puerto Rico or San Juan.

*Demographics*

Mr. Ortíz' jury of eight women and four men[10] included just one who had no experience raising children the ages of nine victims here (or about to), or a career in educating them, or a close family member in law enforcement, or both.[11] Each of those eleven may have been capable of impartiality while evaluating the lascivious

---

[10] While the venire was skewed 32-26 in favor of men, as the result of the prosecution's exercise of peremptory challenges, the regular jury was was 66% female and 33% (7-5) male. The prosecution used all eight of its peremptory challenges–five of them below the line between candidates for regular and alternate jurors, to create this lopsided result. See, Jury List DKT 155 at Sealed APP 56-65. Because no Equal Protection or statutory challenge was raised below, this issue is not raised here.

[11] Jurors # 3 (children 13 and 17), #5 (children 6 and 13), #9 (2 children, ages not specified); #10 (two university students), #7 (raised two children); Jurors 4 and 11(careers in education); Jurors #1 (mother working for PR Department of Justice), #3 (sister working for CBP), #6 (father was Inspector, sister working for POPR), #8, 12 (work for PR anti-drug agency providing services to minors). DKT 213 at 43, 47, 42, 54, 49; 24, 21-22, APP 63, 67, 62, 74, 44, 21-42. Unless otherwise specified, venirepersons are identified by the number in the far left column of the Jury List (DKT 155; seated jurors are referred to herein as "Juror #) by the "Juror Number" to the right of their name. Sealed APP 8-10, DKT 155 at pages 8-10. Juror names have been redacted from the transcript submitted as part of the Appendix.

images and chats and testimony by the teenagers and their parents. But neither Mr. Ortíz, nor this Court, nor the public in general can trust that they were because they were never asked to think about it.

Discussion

Most trial lawyers agree that criminal trials–especially those generating public opprobrium– are often won or lost before opening statements. In those cases, jury selection is the critical stage of the proceeding.

"Among all types of federal offenses, child pornography inherently elicits the most visceral reaction,"[12] a fact illustrated by the consistently broader reach and higher penalties legislated by Congress and sentencing Guidelines.  *See, e.g.*, H.R. REP. NO. 104-90, at 3 (1995) (child pornography described as one of the "most destructive forces attacking today's families"); 141 CONG. REC. H4124 (daily ed. Apr. 4, 1995); "we must act now, and control the infiltration of the obscenity and filth that is destroying the fabric of our society." At sentencing, the judge qualified the facts put to the jury as "sickening"and  "heinous." DKT 218 at 20. On the first day of deliberations, Note 23 (APP-533) asked for two jurors to be excused, and later the same day, to end early because "several jurors feel extremely drained." Note 24, APP-534.

---

[12]  Tess Lopez et al., *Tends and Practice Tips for Representing Child Pornography Offenders at Sentencing*, CRIMINAL JUSTICE, Volume 27, Number 3, Fall 2012.  American Bar Association, at p. 1.

The voir dire was inadequate to permit the venirepersons to anticipate the graphic images and disgusting language they would see and reflect upon how it might affect their ability to serve as impartial jurors. Jury notes discussed *post* reveal that some found it harder than anticipated. Both the rush to convict (Note 17) and the conviction on Count 7, for which no evidence was presented, reveal that voir dire failed to serve its purpose to such a degree that it undermines the public legitimacy of a system that promises procedures that are "neutral, accurate, consistent, trustworthy, and fair." *Pérez-Rodríguez, supra* at 16, quoting *Rosales-Mireles v. United States*, ___ U.S. ___, 138 S. Ct. 1897, 1908, 201 L.Ed.2d 376 (2018).

When fundamental rights are violated, it falls to this Court to "act decisively to correct any possible harmful effects on this appellant". *Id.*–not as a service to the appellant, but the system of justice. This Court has acknowledged the heightened need for specific and careful voir dire for "matters concerning which either the local community or the population at large is commonly known to harbor strong feelings that. . . significantly skew deliberations". *United States v. Robinson*, 475 F.2d 376, 381 (D.C. Cir. 1973).

II.    MR. ORTÍZ' RIGHT TO BE TRIED BY THE JURY OF HIS
       CHOOSING, AND TO BE PRESENT AND REPRESENTED VIOLATED
       BY THE SUMMARY EXCUSAL OF JURORS WITHOUT
       CONSULTATION WITH COUNSEL.

*Facts*

It appears from this record that three jurors were dismissed before

deliberations. While the defense objected to none of these decisions, it appears that

on two occasion, the parties were, at most, summarily informed after the fact,

leaving no record of the reasons.

On the second day of trial, one Juror 13 apparently fled the jury box in a fit

of coughing. APP 184-187, DKT 201 at 15-18. The Court announced that it was

going to excuse her, and did so after sidebar conference, with no discussion of her

fitness to continue serving. She was the first alternate. *Id*. The judge then

immediately instructed the remaining jurors to send a note if they needed a break.

One did. Note 8 (APP 525, DKT 157 at p. 7) advised that a juror had a

medical condition that required urgent use of the bathroom. The response was, in

essence,  "simply send me a note and we will take a break." *Id*. Note 9 followed, so

doing. The written response was "Alternate juror excused." APP-526, DKT 157.

No other mention of this event appears in the transcript, the docket entry or the

daily Minute (DKT 162). This juror's identity was not disclosed.

On the morning of the fifth day of trial, the judge announced, "we lost one

juror but fortunately we have enough alternates. One of the alternates will become a juror. The only explanation, –given at the prosecution's request–, was, "[t]he juror called the Jury Office and asked to be excused for a personal matter that has nothing to do with the case itself." DKT 215 at 3. This was "the former 12." *Id*. at 4.

*Law and Discussion*

The two *ex parte* decisions violate Mr. Ortíz' "valued right to have his trial completed by a particular tribunal." *United States v. Jorn*, 400 US 470, 484 (1971)(quoting *Wade v. Hunter*, 336 U. S., 684, 689 (1949) and his rights under Rule 43, F.R.Cr. Proc. and the Sixth Amendment to be present and assisted by counsel at every stage of the proceedings. "[T]he right to personal presence at all critical stages of the trial ... [is a] fundamental right[] of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). The procedure to be followed in excusing jurors was established in *United States v. Maraj*, 947 F.2d 520, 525 (1st Cir.1991) and the need to inform and consult with counsel reiterated in. *Gonzalez-Melendez*, *supra*, 594 F.3d at 37.

Jurors may, after initially qualifying, become disqualified or unable to serve. Those are judicial determinations, to be made on the record, in consultation with the parties, and by a judge. When an emergency arises outside business hours, if a judge determines that the decision cannot await the morning, it must be reported on

the record at the beginning of the next session so that parties may obtain relevant information and, if appropriate, object. *See Molinares Charris*, *supra*, 822 F.2d at1223 (affirming excuse of deliberating juror who was "nervous and upset" after interviewing her twice, and twice consulting counsel); *United States v. Walsh*, 75 F. 3d 1 (1st Cir. 1996)(counsel and client consulted repeatedly before judge excused the juror); *Olszewski v. Spencer*, 466 F. 3d 47 (1st Cir. 2006)(judge refused to excuse juror because of ill wife, but that night was contacted by her son to say she could not be left alone, and, after conferring with her doctor, excused the juror and informed counsel the next day).

"Where the trial judge takes the time to hear counsel and thoughtfully weighs the options, we will not second guess the decision unless the balance struck is manifestly unreasonable." *United States v. Chorney*, 63 F. 3d 78, 81(1st Cir. 1995). When he or she does not, and apparently delegates the decision to a clerk, the issue is not the balance struck, but the consequence of ignoring longstanding minimal procedures established to protect vital rights.

Appellee will point out that some of the cited cases discuss substantive questions from and/or deliberating jurors, and take refuge in the standard of review. Defense counsel's failure to object and request mistrial cannot be excuse what happened here. When counsel is only informed after the fact, objection would have served no purpose.

The violation of Rule 43 and procedures established to protect fundamental Sixth Amendment and Due Process rights is clear. The summary replacement of three jurors, two without consultation, requires correction not merely to vindicate the rights of this defendant, but all litigants and public respect for the federal criminal justice system. As the Supreme Court said of well-intentioned steps to empanel the most qualified jury in *Glasser v. United States*, 315 US 60, 86 (1942), "[s]teps innocently taken may, one by one, lead to the irretrievable impairment of substantial liberties."

III.       OVERVIEW TESTIMONY FROM AGENTS PRESENTED AS
EXCEEDED THEIR EXPERTISE AND VIOLATED DUE
PROCESS.

In its problematic form, overview testimony comprises declarations by a
witness — most commonly a law enforcement officer involved in the
relevant investigation — presented in the early phases of a criminal trial to
describe the government's general theory of the case * * *, often provid[ing]
an anticipatory summary of the prosecution's case by previewing the
testimony of other witnesses.

*United States v. Valdivia*, 680 F. 3d 33, 47 (1st Cir. 2012); *United States v. Casas*,

*supra* at 120 (discussing the abuse of the rubric of expert testimony to mix

evidence preview with the opinions of law enforcement agents; *United States v.*

*Flores-De-Jesús*, *supra*.

The lack of objection below means that abuse of overview testimony

warrants reversal only if it "likely affected the outcome of trial.'" *United States v.*

*Irizarry-Sisco*, 87 F. 4th 38 (1st Cir. 2021)(internal quotation marks and citations

omitted). *Valdivia*, *loc. cit.*. It did so here because it summarized the prosecution's

case in a "modus operandi" theory linking all the counts and victims before the

jury heard word from any, leading one juror to conclude guilt on all counts before

the prosecution rested, and resulting in at least one unsupported conviction.

<u>Facts</u>

After presenting a friend (SFG) of  KMC ("Victim #1) to read her own

Instagram chat with an *axilas* site, asking it to stop the harassment, after seeing nude photos of a schoolmate sent to a group chat (APP 127-150, DKT 213 at 107-130), a parade of law enforcement agents testified, uninterrupted, over the next two days. Brief factual testimony from Agents Medina (APP 150-167, DKT 213 at 130-147) and Tirado (APP 173-180, DKT 201 at 4-11) led off with the search of Mr. Ortíz' residence and seizure of his devices. APP-175-177, DKT 201 at 6-8.

The next three agents were presented as experts. A "Notice of Expert Testimony" (DKT 120) explained that forensic examiners Wilkins and Segarra "will not be rendering any expert opinion," but was filed pursuant to Rule 702 Fed.R. Evid. "out of an abundance of caution". It proffered that PRPD Officer Agent Segarra would testify about his examination of an extraction of the Samsung, and the one he performed of the LG "looking for evidence related to" the charged offenses. and "the procedure he used to select the particular information relevant to this case." DKT 120 at 3. His credentials related to on the job training to use some Cellebrite products.

Agent Wilkins was also identified as a computer forensics expert. He performed the Samsung extraction and had the results sent to San Juan.[13] He also

---

[13] Prior to hearing any testimony, the judge expressed concern about what information might appear in an extraction report and asked to see it. The prosecutor assured him that she was not intending "to present the report, in and of itself, but the testimony and the findings in the case," and with that, the issue was closed. APP 118, DKT 213 at 98. The "findings," presented in Exhibits 7 and

testified about the general categories of information found on cell phones, which, in fact, are some of the those into which Cellebrite programs can be used to organize its reports. APP-194-195, DKT 201 at 25-26.

It is one thing explain what search histories and thumbnails are, how they are acquired and documented, and an opinion that search history "shows what somebody is interested in, or *what somebody is trying to do*" is not the product of any expertise in digital forensics, nor something that required any. APP-195, DKT 201 at 26. On redirect, asked whether an extraction analysis would identify who used a phone to conduct chats or receive images, he demolished the defense theory with his unscientific "personal opinion" that regardless of number of accounts "it comes back to the same subscriber ultimately."APP-202, DKT 201 at 33.

Agent Segarra testified as a "computer expert" for the remainder of the day. APP-204-275, DKT 201 at 35-106 and into the next. APP 284-298, DKT 204 6-20. His testimony identifying the programs and information on the telephones and how Mr. Ortíz' personal accounts related to those of *axilas* entities was unobjectionable and vital to the prosecution's case. He abandoned his expertise, however, to put together the prosecution's case and advocate from the witness stand. The Cellebrite process and product were not the object of his testimony. Skipping over details that

_____

were, in fact, a selection of what the agents found helpful in the extraction reports. They were never examined by the Court.

required his expertise, he explained that he "processed" the phones "to try to find evidence" (APP-211, DKT 201 at 43). The results, compiled with Case Agent DeJesús, were recorded on Exhibits 7 (folders made from data extracted from the SAMSUNG) and Exhibit 8 (same from the LG). APP 215-216, DKT 201 a 46-47.

During a tour of Exhibit 7, he identified 14 "files" with labels such as "Child Pornography," "Victims", "Penis Fotos", "Search History", etc.. Asked to "summarize . . . your findings relating to the Child Pornography folder" (APP-226, DKT 201 at 57), Segarra recited global numbers of "tags " and "thumbnails," images and videos, without qualification as to character (commercial, adult) or relevance (within the period). At the prosecution's direction, he would read, for example a snippet of a SnapSaver audio conversation from an "identified victims" file in the "child pornography" folder." At other times, spontaneously do so on his own APP-236-38, DKT 201 at 67-69, APP-211/ DKT 201 at 43.

This mode of examination moving from "child pornography" to "identified victims" files, quickly opening and closing some at the prosecution's direction continued. *E.g.*, "Scroll down and indicate what are search terms that called your attention" APP- 251, DKT 201 at 82. Questions like "Any other item you were going to emphasize in?" allowed him to preview (APP-255, DKT 201- at 86) Exhibits 7 and 8, through some 70 pages of transcript. From this record, it is impossible to determine what the jury saw when the agent would "open Number 9"

and say whether it represented an "identified victim." APP-236, 238, DKT 201 at 67, 69.

Agent Segarra was not telling the jury what role a defendant played in a conspiracy, but testifying that certain images were those of "victim's" and that they constituted "child pornography" is the functional equivalent. The jury was listening. Alerted to the Agent's pointing out file history sites with names like "jailbait", a juror sent a note requesting elaboration, discussed below.

Case Agent De Jesús, qualified as an expert in child pornography, testified for most of the third day of trial. APP-300-408, DKT 204 at 21 - 129. Her testimony also exceeded the license granted by Fed. R. Evid. 702; much was not helpful to the jury under Rule 701. Her testimony about how she acquired the records of the various accounts and the names and identifying data for each was appropriate and relevant, as was her identification of photos of the young women as they appeared when interviewed. APP 309-316, DKT 204 at 31-38,), APP-391-394, DKT 214 at 113-16. But her presentation of the prosecution's theory of the case was appropriate for closing argument, not expert testimony. For example, her conclusion that:

> the same modus operandi which was requesting underarm photos from female minors and progressively leading them to produce other images until it got to the point where they were being solicited for sexually explicit photos and/or images.

APP-318, DKT 204 at 40, And see similar "modus operandi" testimony at APP 326, DKT 204 at 48.

Under the "progress of the investigation" rubric, Agent DeJesús used terms of art to tell the jury that minor "victims . . were being solicited, sexually explicit photographs and videos" (APP 343 DKT 204 at 65), and pointing to certain items as important "as evidence". APP-366, DKT 204 at 88. She repeatedly identified images as the "genitals of [an identified victim] or simply, "female genitals" without establishing the basis for her conclusion (particularly with respect to images she attributed to girls she did not interview), or at times without revealing what she and, presumably, the jury, was looking at. *See, e.g.*, APP-373-77, DKT 204 at 95-99.

No lay witness would be permitted to identify intimate body parts of strangers without establishing a basis for their ability to do so. Agent De Jesús had specialized knowledge that enabled her to identify suspicious communications, track down service providers and identify account users, and interview victims. It did not, without more, enable her to identify nude or explicit photos as belonging one or another young woman.

*Discussion*

This testimony bears the hallmarks of prohibited overview testimony and illustrates why this Court has "repeatedly admonished" its use. *United States v.*

*Rosado-Pérez*, 605 F.3d 48, 55 (1st Cir.2010), *Casas*, *supra* at 117-20 (1st Cir.2004); *Flores-de-Jesús*, *supra. United States v. Vázquez-Rivera*, 665 F.3d 351, 356 (1st Cir.2011); *United States v. Meises*, 645 F. 3d 5 (1st Cir.2011) at 14 n. 13. It came at the beginning of the trial, was cloaked in expertise, and presented the prosecution's theory of guilt before presenting facts.

It is "especially problematic because juries may place greater weight on evidence perceived to have the imprimatur of the government". *United States v. Casas*, *supra* at 120. And it is exacerbated when the overview witnesses come equipped with expert qualifications, but provide testimony outside the purview of their expertise and not "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R.Evid. 701(b). When "`the witness is no better suited than the jury'" to make the judgment at issue, *United States v. Kornegay*, 410 F.3d 89, 95 (1st Cir.2005) (quoting *United States v. Jackman*, 48 F.3d 1, 5 (1st Cir.1995)ractually," it must be excluded to prevent "the admission of opinions which would merely tell the jury what result to reach,'" *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir.2007) (quoting *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir.1992) (quoting Fed. R.Evid. 704 advisory committee's note on 1972 Proposed Rules)). This is precisely what Agents Wilkins, Segarra and De Jesús did.

*The Conviction on Count 7 Illustrates the Danger of this Testimony*

The jury convicted Mr. Ortíz on all 19 counts in the period between after lunch on day 8 until 3:46 the next day. DKT 217 at 8-9, APP 510-11. Count 7 identified AMR as 9 years old at the time of the events. The jury had trouble finding evidence of her. Jury Notes 25, 26, 28 (DKT 170), APP-535-539. Little wonder. The first time AMR was mentioned in the transcript (other than in recital of the indictment)  was in the prosecution's closing. APP  463, DKT 216 at 63. Notes 25 and 26 echo her words.

Agent De Jesús did not interview AMR, and she did not testify. The indictment listed  seven victims with three-letter initials ending in "R": APR, DAR, AMR, KDR, CAR, and ASR. In addition to testimony about those last six victims, Agent De Jesus identified an "ARR"[14] who was nine at the time and had an older sister. DAR testified that she had a sister who was seven at the time of the events, ADMRR. In closing, the prosecutor referenced ARR and AMR. APP 465 DKT 216 at 55 ("Victim 4 is ARR") and AMR ("sister of DAR") *Id*. 473, 65.

On that evidence, no correctly instructed jury, unprejudiced by the extensive overview testimony emphasizing a uniform "modus operandi" leading to the conclusion expressed in Note 17 that it was not necessary to hear the evidence on each and every count, could have convicted Mr. Ortíz on Count 7. For that reason,

---

[14]  Agent De Jesús testified about ARR. APP 333, 334, 384, 391, 394(twice on somepages). DKT 204 at 55, 56, 106, 113, 115, 116.

it must be reversed and judgment of Not Guilty entered.

**IV. THE DISTRICT COURT'S RESPONSE TO JURY QUESTIONS VIOLATED THE SIXTH AMENDMENT RIGHT TO FAIR TRIAL AND FIFTH AMENDMENT RIGHTS TO REMAIN SILENT AND THE PRESUMPTION OF INNOCENCE.**

The Jury Had Questions

The Court's Preliminary Instructions included: "If you need to tell me something, simply give a signed note to the Court Security Officer to give to me." ( Preliminary Instruction #15), reiterated in #19, (Cautionary Instruction Before Court Recess). APP-111 and 114, DKT 213 at 91- 94. The jury sent a total of 29 notes (many for lodging). Substantive ones were discussed on the record. They also appear at APP 525-540.

The law

"Allowing jurors to pose questions during a criminal trial is a procedure fraught with perils. In most cases, the game will not be worth the candle." *United States v. Sutton*, 970 F. 2d 1001, 1005 (1st Cir. 1992). Federal courts have assumed that a judge's control of the manner of presenting witnesses and evidence extends to allow questions this practice under Fed.R.Evid. 611(a).

The fountainhead for this shaky proposition is *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F. 2d 512, 517 (4th Cir. 1985), a complex civil case, which noted the "very considerable"dangers". The practice is discouraged, not because it has no home in the Federal Rules of Evidence or Federal Rules of Criminal

Procedure, but because it tampers with the very concept of due process in our adversary system. *Sutton* declined to rule the practice "prejudicial *per se*," but "hasten[ed] to add that the practice, while not forbidden, should be employed sparingly and with great circumspection." *Id.*.

Those reservations have been repeatedly reiterated in this and almost every other Circuit. *See, e.g.*, *United States v. Cassiere* 13 F.4th 1006, 1018 (1st Cir. 1993); *United States v . Hernández,*76 F.3d 719, 723 (3d Cir. 1999)(collecting cases from First, Second, Fifth, Eighth and Ninth Circuits, and citing *Sutton)*; *United States v. Ajmal*, 67 F.2d 12 (2d Cir. 1995).

"The fundamental problem" is "the gross distortion of the adversary system and the misconception of the role of the jury as a neutral fact-finder in the adversary process." *United States v. Bush*, 47 F. 3d 511, 515 (2nd Cir. 1995)(quoting *United States v. Johnson*, 892 F.2d 707, 713 (8th Cir. 1989).

*DeBenedetto* acknowledged that, even in the civil context, the risk is structural. "To the extent that such juror questions reflect consideration of the evidence — and such questions inevitably must do so — then, at the least, the questioning juror has begun the deliberating process with his fellow jurors." *Id* at 517. *And see*, *Bush, supra* at 515 ("a subliminal invitation to launch prematurely into evaluating the evidence"); *United States v. Brockman*, 183 F.3d 891, 898 (8th Cir. 1999) ("the process of formulating questions may precipitate prematurely the

deliberation phase of [the] trial").

The D.C. Circuit emphasized a concern particularly salient here–distorting jurors "from their appropriate role as neutral fact-finders". *United States v. Rawlings*, 522 F. 3d 403, 408-411 (D.C. Cir. 2008). Juror questions posed by judges shatter both the reality and the appearance of the neutrality essential to the respect for the distinct roles of each, and, thus, the legitimacy of the institution and our system of justice.[15] "Neutrality and passivity are essential not only to ensure an evenhanded consideration of each case, but also to convince society that the judicial system is trustworthy." *Sutton* asks four questions for the reviewing court:

1. Did the complexity of the case require a clarifying question?
2. Were the questions few and bland?
3. Were appropriate safeguards were adopted?
4. Was there an objection?

*The Questions and the Answers*

**Note #10** was shared at the close of the prosecution's direct questioning of Agent Darren Segarra (APP-276)(DKT 201 at 107): It asked *"JB jail bate or jailbake at what is he referring to?"* APP 527.

While scrolling through a "file history report" of Google searches derived from the extraction of the Samsung, Segarra was asked to identify search terms

---

[15] Stephan Landsman, *A Brief Survey of the Development of the Adversary System*, 44 OHIO ST. L.J. 713, 713 (1983) at 715.

"that called your attention", and selected "jb", explaining that it resonated,

"[b]ecause it's similar to the term jailbait. It's used to search about young ladies,

*like, the term itself says, jailbait*, these are minors. . .".  APP 252-53, DKT 204 at

83- 84 (emphasis suppllied).  Later that day, the judge told counsel that he would

pose a juror's question about "what the initials J.B." mean to the witness . . . so you

can cross-examine on the answer." APP-276, DKT 201 at 107. The next morning,

the Judge asked:

> Q. First question, Agent Segarra, based on your experience in investigating
> child pornography cases, *what do you understand the term jailbait to mean*?
> A. I have seen this on other devices where searches have been carried out
> and what shows up is images of the prepubescent girls in explicit poses, not
> necessarily sexual but explicit.
> **THE COURT:** The follow-up question, *what do you understand the initials
> JB to mean*?
> A. That would be the abbreviation of jailbait.

APP-286, DKT 204 at 8.

*Discussion*

Far from bland, this question cried out for measures to keep the practice

within its proper bounds. It had nothing to do with complexity. A juror's curiosity

about "self explanatory" term hardly requires explanation. It  was also irrelevant

excludable under Rules 401, 402 and 403 Fed.R.Evid., but coming from the judge,

acquired gravity beyond its relevance.

The answer: *"I have seen this on other phones and what turns up is*

*adolescent girls in explicit, not necessarily sexual, but explicit poses*" (APP-286

DKT 204 at 8) not only highlighted the titillating term, but confused words of

ordinary usage (adolescent, explicit) with those used as terms of art in elements of

an offense. This, from an expert whose answer predictably emphasized that the file

history suggested not only guilt ("adolescent girls" in "explicit" poses), but

consciousness of guilt (looking for "jail bait").

The decision to ask this question of an investigating agent presented as an

expert was a serious error, especially in absence of any cautionary instruction. Did

it turn the tide? Probably not, but it did open the floodgates.

**<u>Note #12</u>**

Later that same day, the transcript reflects this at sidebar:

"Jury note 12 reads: *'I noticed a file that called my attention. The name is

Claro. It concerns me that this supposed exposition of images of victims creates a

risk of abduction'.*" APP at 299, DKT 204 at 21. The judge announced that he

would call the juror to side bar, assuage her fears, and ask if she could be fair and

impartial. *Id*. Initially responding "that's what I was thinking," as defense counsel

continued, "it sounds like she thinks my client would abduct . . .", his musing was

cut off  by a contrary interpretation from the prosecution and judge. APP at 300,

DKT 204 at 22. Because nothing related to "Claro," had been (or would be)

presented, (APP-321, DKT 204 at 43), the parties discussed how it could have

come to the juror's attention.

Called to sidebar, the juror's reading of the note appears as:

*During revision of CD1, I notice a file that calls to my attention the name is something like PR quiero ser tu esclava ["I want to be your slave."]. It concerns me if this supposed exhibition of videos or images of victims and creates a risk of some kind of abduction of [sic] another approach.*

APP 322, DKT 204 at 44.

As promised, she was told that law enforcement would deal with any "safety concerns," adding "you should not be concerned for the safety of persons in PR on the Claro site, which by the way, this case is not about that site. " APP-323, DKT 204 at 44. No one mentioned ""quiero ser tu esclava/I want to be your slave"

Like the first question, this one was anything but bland, and was about something both irrelevant and unfairly prejudicial. Both were provoked, not by the complexity of the case, but the court's invitation to pose questions and the prosecution's decision to take the jury on a tour of conglomerate exhibits from file extractions full of data not strictly relevant, and clearly more prejudicial than probative.

The side-bar instruction improperly validated a juror's exaggerated security concerns inimical to the presumption of innocence. *See, e.g., United States v. Smith*, 31 F.3d 469, 472 (7th Cir.1994)(jury's concern about the defense counsel's access to their information threatened Due Process because it "might reasonably

indicate that the jury had concluded . . .that Smith was guilty and posed a danger to them."

A juror beset by safety concerns is not "indifferent" in the constitutional sense ("The constitutional standard requires that a defendant have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 792, 799) (1975)(internal quotation marks omitted). *See, e.g., United States v. Simtob*, 485 F.3d 1058, 1064 (9th Cir. 2007)(juror felt threatened by defendant's looking at him; court failed to make proper inquiry or issue instruction); *United States v. Blitch*, 622 F. 3d 685 (7th Cir. 2010).

The failure to request further voir dire or curative instructions means that this incident itself does not warrant reversal, but  is evidence of a snowballing trend that, in the end, does.

**Note 17,** shared with counsel on the fifth day of trial, asked:

*Is it necessary to listen to all the victims? We can tell throughout the other interviews/witnesses the process of persisting and blackmailing, by threatening the victims, there's plenty of evidence at hand. What else is needed to provide a verdict on each count? Can we proceed and simply have the defendant testify? (F. Ortíz).*

(DKT 215 at 48-49).

The parties initially appeared to agree to leave the issue for final instructions, but acknowledged the salience of a defendant's right not to testify. DKT 215 at 50-51. The judge ultimately promised to interview the juror, with a

three point response highlighting the prosecution's duty to present evidence, that the defendant has no duty to testify and no adverse inference can be drawn, and that the jury must keep an open mind until all the evidence is in. No objection was heard. *Id*.

The juror was never interviewed. After further discussion and modification of the text of the response, the judge asked: "should we impart this to all the jurors?"; defense counsel replied "why not, they are part of the instructions, anyway." DKT 215 at 53-54. Then, in open Court:

> **THE COURT:** Ladies and gentlemen, I received the following note from one of you:
> "Jury note number 17: Is it necessary to listen to all the victims? We can tell through the other interviews of the witnesses the process of gaining the pictures. It's by persistency and blackmailing by axilaspromociones. There is plenty of evidence at hand. What else is needed to provide a verdict for each count? Can we proceed and simply have the Defendant testify?"

The response to those two questions and that jury note is the following:

> The Government bears the burden of proof beyond a reasonable doubt. Therefore, the Government has to present evidence as to each of the 19 counts. So there is no short-circuiting the presentation of evidence at this time.
> As I instructed you at the beginning of the case, the Defendant, Francisco Xavier Ortiz-Colon, does not have to testify or present any evidence. Moreover, no adverse inference or conclusions can be brung [sic.] from Defendant Ortiz-Colon's decision not to testify or present evidence in a case in chief. As I also instructed you at the beginning of the case, jurors must keep an open mind until all the evidence has come in and you retire to deliberate.

DKT 215 at 54-55.

The defense had no inkling that the "this" the judge proposed to read was not the remedial instruction, but the devastating question. "**Persistency blackmail and threats**". "**Plenty of evidence** . . . **what else is needed to provie a verdict on every count?**" "**Can we proceed and simply have the defendant testify**?"

Apparently stunned, the defense presented no motion for mistrial or other objection. But this was no mere procedural error. It was not only proof of disastrous pre-instruction deliberation by one juror, but, when broadcast, the dissemination of damning opinions to the rest, and mortal blow to the presumption of innocence.

The decision to broadcast the content of this note was the unforeseeable product of this Court's tolerance of a "dangerous practice" with no real limits or guardrails.  It demands correction, not just for the sake Mr. Ortíz, but that of future litigants and judges. Collectively, the questions and responses below failed the *Sutton* tests. They were not provoked by complexity, they were neither few nor bland, and the response, in each case, did more damage than repair. They failed to provoke an appropriate reaction from defense counsel. Does that mean that the verdict produced by this jury should stand? Under *Olano* and progeny (*United States v. Levin*, 13 F. 4th  96, 100 (1ˢᵗ Cir. 2021); *United States v Millán-Machuca*, 991 F.3d 7, 28 (1ˢᵗ Cir. 2021), the answer is No.

Once so gored, the presumption of innocence cannot be restored by mere recital of the legal principles; there is no *status quo ante*. It is the quintessential measure of fairness in our criminal justice system. Without it, the process received is not that contemplated by the Constitution. The fact that counsel may have been asleep at the wheel does not excuse the violation, it compounds it. Nothing short of a new trial can serve to vindicate not only the rights of this defendant, but to restore public faith in our adversary system of justice in the federal courts.

# V. SENTENCES IMPOSED FOR RECEIPT AND POSSESSION OF CHILD PORNOGRAPHY, AS WELL AS 18 U.S.C. §2251(a) AND §2422(b) VIOLATED THE DOUBLE JEOPARDY CLAUSE WHEN THE INSTRUCTIONS MADE THE FORMER AN ELEMENT OF THE LATTER .

The instructions presented the jury with a Matryoshka of lesser-included offenses. While the prison sentences are all concurrent, a separate Special Monetary Assessment was imposed for each count of conviction, for a total of $1,900.00.

## The Indictment

For each of eight identifiable minors, the indictment alleged that Mr. Ortíz violated a pair of statutes during a specified period, resulting in eight convictions for violation of 18 U.S.C. §2251(a) (officially "Sexual exploitation of children", herein herein "the production counts" and, eight for violation of 18 U.S.C..for violation §2422(b)(2) (the "coercion counts"). One count was charged for receipt of child pornography (18U.S.C. §2252A(a)(2) and one for its possession (18U.S.C. §2252A(a)(5)(B).[16]  The relevant instructions (17-20) are found at APP 626-630, DKT 216 at 31-35 and included at AD-10-19. The Indictment is reproduced at AD-20-33.

---

[16] Counts 1, 4, 6, 7, 9, 11, 15, 13, 17 and 19 charged production; Counts 2, 3, 5, 7,8, , 10, 14, 16 and 18 charged coercion. One minor is charged in one count (7) only.

*Argument*

## A. Possession is a Lesser Included Offense of Receipt

Count 12 charges receipt of child pornography in violation of 18 U.S.C.

§2252(a)(2). Count 13, possession of child pornography in violation of

§2252A(a)(5)(B). The period alleged in Count 12 spans that of the acts charged in

the substantive counts;  Count 13 extends the possession until the date Mr. Ortíz'

telephones were seized.

Under *Blockburger  v. United States*, 284 U.S. 299 (1932), the Double

Jeopardy Clause is violated if the elements of one offense are the same as those of

the other, and the same evidence is relied upon to prove both. Here, the jury was

instructed that conviction on the possession count required proof that defendant (1)

possessed "mobile phones" (2) the phones contained at least one image of child

pornography, and (3) Mr. Ortíz knew that they did. APP-445, DKT 216 at 35. The

mobile phones were those on which the images were received. Mr. Ortíz was

convicted once for receiving and once for possessing the images on his telephone.

Or, better said, for not achieving the now technologically impossible feat of

discarding them.

The Double Jeopardy Clause "protects against . . . multiple punishments for

the same offense." *North Carolina v. Pearce*, 395 U. S. 711, 717 (1969). Double

jeopardy "forbids successive prosecution and cumulative punishment for a greater

and lesser included offense." *Brown v. Ohio*, 432 U.S. 161, 169, (1977). Thus,

courts may not impose multiple punishments for what is essentially the same

offense. *Allen v. Att'y Gen. of Me.*, 80 F.3d 569, 572 & n. 3 (1st Cir.1996)." *United*

*States v. Medina-Villegas*, 700 F. 3d 580 (1st Cir. 2012)(cleaned up).

In *United States v. Catalan-Roman*, 585 F. 3d 453, 472 (1st Cir. 2005), this

Court recited the blackletter test of *Blockburger*, *supra* at 304:

> where the same act or transaction constitutes a violation of two distinct
> statutory provisions, the test to be applied to determine whether there are two
> offenses or only one, is whether each provision requires proof of a fact which
> the other does not.

The classic cases establishing receipt as a lesser included offense of

possession involve a different kind of contraband–firearms– but the principle is the

same. *See, e.g.*, *United States v. Ball*, 470 U.S. 856, 862 (1985), the Supreme Court

applied *Blockburger* to find the Double Jeopardy Clause violated when "proof of

illegal receipt of a firearm necessarily includes proof of illegal possession of that

same firearm." *And see, e.g., Rutledge v. United States,* 517 U.S. 292, 297 (1996)

(courts have often concluded that two different statutes define the same offense. . .

because one is a lesser included offense of the other)(cleaned up). *And see*, *Catalán-*

*Román* (prosecution "sensibly conceded" for carriage and use).

Relying upon *Blackburger*, *Brown*, and *Ball*, other circuits have long determined that when prosecution proves that a person "knowingly receives" child pornography, it has necessarily proven that s/he  "knowingly possessed" that same child pornography.[17]  *See, e.g., United States v. Miller*, 527 F. 3d 54,73 (3d Cir. 2008)(on plain error, citing *Ball*)*; United States v. Davenport*, 519 F.3d 940, 945 (9th Cir. 2008). "A conviction for receipt necessarily includes proof of the elements required for conviction under possession, and possession is a lesser included offense of receipt.*" United States v. Miller*, 527 F.3d 54, 72 (3d Cir. 2008)(applying *Ball* to find plain error to impose two sentences for the statutes charged in Counts 12 and 13); *United States v. Ehle*, 640 F.3d 689, 698 (6th Cir.2011)(possession under § 2252A(a)(5)(b) is a lesser-included offense of receipt under §2252A(a)(2)(A))*; United States v. Brown*, 701 F. 3d 120 (4th Cir. 2012)(receipt and possession of same images involve lesser included offenses; proper remedy is

_____

[17]  This Circuit's Double Jeopardy jurisprudence in the context of child pornography appears to be limited to its unit of prosecution aspect. *See, e.g, United States v. Chiaradio*, 684 F. 3d 265 (1st Cir. 2012); *United States v. Pires*, 642 F. 3d 1 (1st Cir. 2011); *United States v. Stefanidakis*, 678 F. 3d 96 (1st Cir. 2012)*, but see*, *United States v. Kamen*, 491 F. Supp. 2d 142, 143 D. Mass. 2007) resolving the issue as one of first impression, and remanding for new trial.

vacate the conviction of the sentence with more lenient penalty); *United States v. Bryner*, 392 F. App'x 68, 73-74 (3d Cir. 2010) *United States v. Muhlenbruch*, 634 F.3d 987, 1003-04 (8th Cir. 2011); *United States v. Schales*, 546 F.3d 965 (9th Cir. 2008); *United States v. Bobb*, 577 F.3d 1366, 1373-75 (11th Cir. 2009). Because the images received on Mr. Ortíz' phones were the ones he possessed when he was arrested (and none other were identified), the convictions on the possession count must be vacated.

B. As Charged and Instructed below, Conviction and Punishment for Production and Coercion Violate Double Jeopardy.

**Instruction 18** (on 18 U.S.C. §2422(b)) replaced "to engage in **prostitution or any sexual activity** for which a person may be charged" with "*to engage in any criminal activity*," and then instructed that the offense charged in Instruction 17 (18 U.S.C. §2251(a) **was a criminal activity**. DKT 216 at 33.

Section 2422(b) contemplates the identification of some distinct sexual offense as the focus of the prohibited coercion or enticement. Congress did not contemplate–and the Double Jeopardy Clause does not allow– the anomalous result here: that a defendant will be found guilty of one offense in the indictment (enticement) because he is convicted of another in the same indictment (the accomplished objective of the enticement).

Mr. Ortíz' jury was told that the fact that he was charged with §2251(a) with respect to a specific minor may be relied upon to convict him of 2422(b) for that minor. As relevant here, both *statutes use the same operative verbs:* "uses, persuades, induces, entices or coerces" (§2251(a)) and *"persuades, induces, entices or coerces"* (§2422(b)). In the 2251, the prohibited purpose is single: receipt or distribution of a visual image depicting a minor engaged in sexually explicit conduct); in the second, it is broader (any sexual activity for which a person can be charged with a criminal offense). But here, the production served as the prohibited purpose element of coercion.

Such redundancy is usually avoided in §2422 prosecutions because, as noted as noted in *United States v. Dwinells*, 508 F. 3d 63, 72 (1st Cir. 2007) the "offense for which a person could be charged" element is usually furnished by state, not federal law, precluding both in the same indictment. *United States v. Dwinells*, 508 F. 3d 63, 72 (1st Cir. 2007) noted the "peculiarities" of 2422(b), which refers to some other criminal offense, but "is silent as to which sovereign's law defines those offenses" (ruling that a violation of Massachussets laws sufficed). *And see*, *United States v. Montijo-Maysonet*, 974 F. 3d 34 (1st Cir. 2020); *United States v. Saldaña-Rivera*, 914 F.3d 721, 724 (1st Cir. 2019) (explaining that "chargeable sexual activity" under § 2422(b) "includes crimes defined by" state and Puerto Rico

law). *And see*, *United States v. Taylor*, 640 F. 3d 255 (7th Cir. 2011)(noticing the paucity of law and the often implicit assumption that the 2422(b) refers to state laws).

When a single indictment charges both the greater and the lesser included offense, the preferred remedy is election of redundant counts to avoid the prejudice of jury confusion. But when that fails, in order to avoid a Double Jeopardy violation, the lesser offense is subsumed or "merged" in the greater. *See*, e.g., *United States v. Pires*, *supra*.

These double jeopardy errors meet the plain error standard. They are clear the record and, as the Third Circuit noted with respect to the possession and receipt statutes at issue here, legally obvious under established law. *Miller*, *supra*, at 73. They affect substantial rights because "the Fifth Amendment right to be free from duplicative prosecutions and punishment is a hallmark of American jurisprudence." *Id*., (internal quotation marks, citation, omitted).

In addition, the nineteen sentences are not entirely concurrent. *Ray v. United States*, 481 US 736, 737 (1987)(*per curiam*)(three $50.00 SMAs meant sentences not concurrent because the defendant's liability to pay the total assessment depends upon the validity of each of his three convictions). *And see*, *Rutledge v. United States*, 517 U.S. 292, 302 (1996) (acknowledging potential adverse collateral

consequences of multiple convictions "that may not be ignored." *United States v. Takesian*, 945 F. 3d 553, 569. n. 10. (1st Cir. 2019).

To the Court, $100.00 per redundant count may not seem like much of a punishment, but $800.00 will buy a lot of telephone minutes with family, packets of laundry soap and instant coffee. In addition, ever-changing BOP regulations and DOJ collection efforts may affect his classification and evaluation or mean exclusion from programs and benefits, until it is satisfied. Failure to remedy it such an obvious error would undermine the credibility of our criminal legal system and respect for law.

VI.    THE THIRTY YEAR SENTENCE IS SUBSTANTIVELY
       UNREASONABLE.

As this brief was being finalized, the *Los Angeles Times* announced that the man who broke into the home of former House Speaker Nancy Pelosi, hoping to kidnap her, instead bludgeoned her husband in the head with a hammer was sentenced in to thirty years in prison.[18] Mr. Ortíz touched none of his victims. He committed a serious offense against their privacy and dignity, and was subject to no less than 15 years in prison. The issue presented here is whether twice that time unreasonably exceeds what is necessary to vindicate those interests.

*Standard of review*:

The claim of substantive unreasonableness is reviewed for abuse of discretion. *United States v. Sansone*, 90 F.4th 1, 10 (1st Cir. 2024); *Holguin-Hernandez v. United States*, ___ U.S ___, _ 206 L.Ed.2d 95 (2020) 140 S. Ct. 762, 766 (2020).  It is more than an uphill battle when the unreasonable sentence is itself the result of a downward variance. But here, the variance represents wide-spread rejection of the Guidelines, but fails to acknowlege factors that mitigate this offense and offender.

_____

[18]
https://www.latimes.com/california/story/2024-05-17/depape-sentenced-30-years-paul-pelosi-hammer-attack, last viewed May 18, 2024.

FACTS

Fifteen days after the verdict, new counsel entered an appearance for Mr.

Ortíz. DKT 174. She lodged no objections to a Pre-Sentence Report (DKT 200,

Sealed APP 1 - 36. USSG §2G.2 and its offense-specific add-ons, it

resulted in the off-the-table Level 50, automatically reduced to 43, which offers no

alternative to life– for career- offenders, gang-bosses, murderers, and first

offenders seeking pornographic images– without distinction.

The three-page Sentencing Memorandum (DKT 203) cited the following

mitigating factors, relying upon the neuropsychological evaluation for competency

submitted in support of the Motion to Dismiss. (DKT 103-1, Sealed APP at 27-50).

- mild autism spectrum disorder,
- a global IQ "within the borderline range" ((FSIQ SS = 75), DKT 103-1 at 4, Sealed APP at 40)
- "low average to borderline functioning" in both verbal comprehension and nonverbal performance,
- significant impairment in making inferences, processing information and decision-making speed"
- epilepsy, mild cognitive impairment, specific learning disorder and depressive disorder.

The Motion also reported that Mr. Ortíz had been the victim of persistent

bullying at school, attended and secured a diploma from an "Advanced Education

Specialized Center" and attempted to study various trades, without success. At age

16 he met and married his wife, ten years his senior; their only child, an infant, was

diagnosed at Level 3 on the autism spectrum.  In short, it invoked 18 U.S.C. §3553, in support of a request for a mandatory minimum sentence of 15 years and, at sentencing,  expressed that a greater one would be excessive. DKT 218 at 12.

At the hearing, Mr. Ortíz' mother established that the neurological disabilities were the result of complications during her high-risk pregnancy that affected her son's intellectual, motor and social development. DKT 219 at 8-9. The rejection and bullying he experienced as a result led him to avoid social interaction with peers, retreating into a world of computer games. She described him as a "child in the body of a man." *Loc. Cit.* His wife described him as a devoted companion, father and step-father who was the sole provider for the family.

The prosecution relied upon the Guidelines and argued that "[h]e should be sentenced based on the fact that he went to trial," noting that this inflicted additional trauma, and, of course, he was entitled to "no additional reduction" from the Guidelines sentence. DKT 218 at 17.

The PSR noted that while all the minors identified in the indictment acknowledged receipt of victim impact statements, four could not be contacted while the other five expressed no interest "as they had moved on with their lives." Sealed APP (DKT 200 at 14 ¶45-46). Some family members did speak out. One, to the effect that the incident added to pre-existing depression and anxiety. *Id*. at  ¶47.

The parents of two adolescents (ACM and SFG) addressed the Court. ACM's

mother had been "a victim in a similar case." DKT 218 at 13.  A father who chatted

with him emphasized Mr. Ortíz' lack of empathy.[19] *Id*. at 14. The prosecutor again

---

[19]  Lack of empathy is commonly attributed to neurologically diverse persons with Autism Spectrum Disorder and others, but may represent cognitive, not moral deficit.  Scientific literature is exploring the neurological basis for difference between cognitive and affective empathy in people on the autism spectrum. *See, e.g.*, Baron-Cohen, S. & Wheelwright, S. J. *The Empathy Quotient: an investigation of adults with Asperger syndrome or high functioning autism, and normal sex differences*. J. AUTISM DEV. DISORD. 34, 163–175 (2004); Jeanette Kennett, *Autism, Empathy and Moral Agency*, THE PHILOSOPHICAL QUARTERLY, VOLUME 52, ISSUE 208, July 2002, Pages 340–357, https://doi.org/10.1111/1467-9213.00272 Jones AP, Happé FG, Gilbert F, Burnett S, Viding E. *Feeling, caring, knowing: different types of empathy deficit in boys with psychopathic tendencies and autism spectrum disorder*. J CHILD PSYCHOL PSYCHIATRY. 2010 Nov;51(11):1188-97. doi: 10.1111/j.1469-7610.2010.02280.x. PMID: 20633070; Melinda Wenner Moyer, *Autistic Sex Offenders Often Don't realize They've Broken the Law: Should that Matter*?, Slate, 7/18/19, available at https://slate.com/news-and-politics/2019/07/autism-first-time-sex-offenders-law-awareness-policy.html, last viewed 5/16/2023.

 *And see, e.g.*, *United States v. Zuk*, 874 F.3d 398,404 (4th Cir.2017)(26 month time served sentence for defendant with mild autism reversed. Expert explained that people with this diagnosis often had "trouble with social interaction" based on their "difficulty in understanding perspective" or feeling empathy; had "unusual[ly] intense engagements in certain activities, almost resembling sometimes obsessive behaviors". He found "a very strong connection" between "autism and ... some of the unique features" of child pornography cases he had seen. Due to their "very limited social skills," those accused often lack knowledge of appropriate "sexual behavior and interaction"; often "don't have a concept that what they're doing is illegal when they get started"; and that their obsessive tendencies and social isolation can lead them to spend increasing computer time searching for child pornography.

emphasized that trial meant trauma for the adolescents. DKT 218 at 14-17.

Judge Arias found the Guidelines correctly calculated, but joined the vast majority of district judges implicitly or explicitly rejecting them as stratospheric. However, the 30 year sentence measured his degree of disgust with messages he found "sickening," full of "malice and cruelty," and facts characterized as "heinous." DKT 218 at 19-20. From the perspective of the minors and their families, they unquestionably were. From the perspective of society, they warrant harsh punishment. The question is: does it measure them in the context of similar offenses and reflect the history and circumstances of their author?

*Argument*

The District Court abused its discretion when it abandoned the parsimony principle to impose a thirty year sentencing on this young man (22 at the time of the offenses) with more than "some mental health challenges and limitations." The Guidelines range from an extremely high mandatory minimum of 15 years to life imprisonment. The discretion exercised within such a broad range requires more careful scrutiny than when the range is far narrower.

————————————————

.

In most districts, the child pornography Guidelines no longer establish the norm for "reasonable" sentences. U.S.S.G. §2G.2.1, 2.2 and their long tails of SOCs applied in almost every case for facts inherent in the offense– e.g., use of computer –  here, moving the BOL upward by 8 points (Sealed APP at16-20) have been rejected by judges across the country as an inappropriate starting point. *See, e.g., United States v. Jenkins*, 854F.3d181 (2d Cir.2017)(225-month within the Guidelines sentence for possession and transportation unreasonable ("shockingly high"); *United States v. Dorvee*, 616 F.3d 174, 184, 188 (2d Cir. 2010)(vacating within-guideline sentence as procedurally and substantively unreasonable, noting lack of empirical foundation, and encouraging *Kimbrough* variances because it is "an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." For a history of escalating child pornography guidelines, *see United States v. Henderson*, 649 F.3d 955, 960-62 (9th Cir. 2011).

The Sentencing Commission's most recent study of the production Guidelines establishes that "variance" is the norm, noting that 57% of all production cases involved variance from Guidelines, and that, within a universe that typically

involves aggravating factors absent here (abuse of trust and sexual contact). [20]

In 2019, the average sentence imposed in cases governed by the child pornography production Guidelines was **7 years shorter** (275 months) than that of Mr. Ortíz, and over half of them (61%) included increments for children under 12. The Commission noted that "longer sentences, on average in excess of 300 months" were imposed for factors not present here: offenses involving infants or toddlers, a familial or close relationship between the offender and victim, any sexual contact, or incapacitation of the minor.

The Commission has repeatedly documented the rejection of these Guidelines by District Courts–defeating one of it's principal *raisons d'être*–and urged Congress to release it from their blatantly unreasonable results. In addition to the Production study cited above, *see,* U.S.S.C. studies cited at n. 21.

In *United States v. Grober*, 595 F.Supp.2d. 382 (D.N.J. (2008))(downloading) the "draconian" 235-293 month Guideline range was rejected for the statutory minimum, following extensive hearings from expert witnesses .

---

[20] United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*, October 2021, at 54. *And see*, pp. 3, 8, 22-23, 28-29) available at www.ussc.gov. Last viewed 5/14/2023. And *see, e.g.*, United States Sentencing Commission: *Federal Sentencing of Child Pornography Non-production Offenses,* June 2021 at 2 and 12 (both available from the Commission's website).

The Third Circuit affirmed, acknowledging a record demonstrating lack of empirical basis, the escalator effect of Special Offense Characteristics inherent in the offense (use of computer, age of victims, distribution, accounting for a 6 level increment here) and the much cited, Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines.*[21] *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010).

Barely 22 at the time of the offenses, with significant mental and social limitations, Mr. Ortíz was convicted of engaging in disgusting internet communications that caused real harm to some minors. This is true of everyone sentenced under these statutes, which authorize an enormous range of punishments. His sentence is therefore not illegal. But seven years higher than the average for his offenses is unreasonable.

A victim of bullying, he retreated into a world of computers. Unskilled at ordinary social interactions, in the anonymity of cyberworld, he assumed a role he could not in the physical world to control immature people to obtain pornography for personal satisfaction. He lacked compassion for his victims; his acts were illegal and his interests socially inappropriate. Under the law, this warranted 15 years in

---

[21] available at: https://www.ussc.gov/sites/default/files/pdf/training/annual-national-training-seminar/2016/report_stabenow.pdf, last viewed 5/16/24.

prison. Why twice that much? The record holds no answer.

Our punishment system is governed not by the goals of revenge and repudiation, but two cardinal principles: first that sentencing judges treat "every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U. S. 81, 98 (1996), and secondly, that the punishment be sufficient, but not greater than necessary to serve its social objectives, including repudiation of the offense, retribution, and deterrence. 18 U.S.C. §3553(a)(1)-(7). Of overarching importance in sentencing is . . . an "individualized assessment" of the § 3553(a) factors — which include mitigating characteristics of the offender." *United States v. Colón-Cordero*, 91 F.4th 50 (1st Cir. 2024).

This Court's respect for the discretion of those with the difficult job of fixing sentences means that it is rarely disturbed. But, in order to maintain respect for the institution as a whole, it must be when it is clear that offenses that have the potential for offending universal sensibilities result in sentences for persons whose immaturity, intellectual and social functioning interferes with their compliance with norms. These factors are not meant to provoke compassion, but to suggest that in any rational punishment regime, Mr. Ortíz does not belong in the same box as the

assailant of Paul Pelosi, or Mr. Franik who, with six prior convictions, forcibly abducted a 13 year old girl (and her dog) in violation18 U.S.C. §2423(a) took her to another state, tied her to a tree. The upwardly variant sentence there was the same as the one imposed here. *United States v. Franik*, 687 F.3d 988(8th Cir. 2012).

## CONCLUSION

The errors below were synergistic. The voir dire failed to identify jurors who would give undue weight to law enforcement testimony, and to prepare them for the images they would be required to scrutinize, resulting in a juror's preoccupation with "abduction" and extreme juror stress as evidenced in Notes 23 and 24. Overview testimony allowed them to avoid this unpleasant task, as evidenced by the conviction on Count 7, and one juror's desire to convict on all counts before hearing all the evidence.

The failure to adopt appropriate jury question procedures contaminated the entire jury with that devastating opinion; independently, they resulted in *ex parte* excuses, changing the jury composition without notice to the defense.

Finally, duplicate punishments violated the Double Jeopardy Clause and an excessive sentence was imposed in violation of the parsimony principle.

The convictions must be vacated and remanded for a new trial on all but Count 7, for which a verdict of Not Guilty must be entered. Should convictions be

affirmed, the sentence must be vacated and remanded for application of the parsimony principle in light of the causal as well as mitigating effects of Mr. Ortíz' youth, disabilities and the range of sentences available. Should that not occur, the duplicate convictions and sentences must be eliminated.

ordered.

DATED: July 25, 2024

Respectfully submitted,
LINDA BACKIEL
Ct. Appeals Bar #8766
267 C. Sierra Morena PMB 597
San Juan, Puerto Rico 00926-5583
787-751-4941 lbackielr@gmail.com
787-3685740

## CERTIFICATE OF SERVICE

I hereby certify that this Appellant's Brief on Appeal was filed using the Court's electronic filing system, which will automatically notify the Chief of the Criminal Division of the Office of the United States Attorney for the District of Puerto Rico.

s/ *Linda Backiel*
LINDA BACKIEL

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed.R.App.R. 32(a)(7)(B) because:

2. It contains 14,865 words, excluding the cover, Tables of Contents and Cases only as measured by the word processing program identified below.

3. It complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R. App.P. 32(a)(6) because it has been prepared in Times New Roman 14 point typeface.

s/ *Linda Backiel*
Attorney for Appellant

# CONTENTS OF ADDENDUM

Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-1

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-9

Instructions 17-20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-10

Superseding Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . AD-20

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| Francisco Xavier Ortiz-Colon | ) | Case Number:  3:20-cr-0262-01 (RAM) |
| | ) | USM Number:  54142-069 |
| | ) | |
| | ) | Melanie Carrillo-Jimenez |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)   One (1) to Nineteen (19) of the Superseding Indictment on 11/9/2022.
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 10/31/2019 | 1s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 3/3/2020 | 2s-3s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 3/3/2020 | 4s |

The defendant is sentenced as provided in pages 3 through ___8___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

5/23/2023
Date of Imposition of Judgment

S/ Raul M. Arias-Marxuach
Signature of Judge

Raul M. Arias-Marxuach, U.S. District Judge
Name and Title of Judge

5/23/2023
Date

AD-1

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1A

Judgment—Page   2   of   8

DEFENDANT:  Francisco Xavier Ortiz-Colon
CASE NUMBER:  3:20-cr-0262-01 (RAM)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 5/9/2020 | 5s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 5/9/2020 | 6s-7s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 3/9/2020 | 8s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 3/9/2020 | 9s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 1/31/2020 | 10s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 1/31/2020 | 11s |
| 18:2252A(a)(2) | RECEIPT OF CHILD PORNOGRAPHY | 5/31/2010 | 12s |
| 18:2252A(a)(5)(B) | POSSESSION OF CHILD PORNOGRAPHY | 6/10/2020 | 13s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 4/11/2020 | 14s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 4/11/2020 | 15s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 4/15/2020 | 16s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 4/15/2020 | 17s |
| 18:2422(b)(2) | COERCION AND ENTICEMENT OF A MINOR | 3/15/2020 | 18s |
| 18:2251(a) AND (e) | PRODUCTION OF CHILD PORNOGRAPHY | 3/15/2020 | 19s |

AD-2

AO 245B  (Rev. 09/19)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___3___ of ___8___

DEFENDANT:    Francisco Xavier Ortiz-Colon
CASE NUMBER:    3:20-cr-0262-01 (RAM)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a
total term of:

Three hundred and sixty (360) months as to Counts One to Eleven and Fourteen to Nineteen and two hundred and forty (240)
months as to Counts Twelve and Thirteen to be served concurrently with each other for a total imprisonment term of three
hundred and sixty (360) months.

☑ The court makes the following recommendations to the Bureau of Prisons:

1. The defendant be designated to Devens.
2. The defendant be enrolled in the skills program.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ before_____ ☐ a.m.  ☐ p.m.   on   _____ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to  _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AD-3

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page   4   of   8

DEFENDANT:   Francisco Xavier Ortiz-Colon
CASE NUMBER:   3:20-cr-0262-01 (RAM)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Ten (10) years.
.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AD-4

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

Judgment—Page     5     of     8

DEFENDANT:  Francisco Xavier Ortiz-Colon
CASE NUMBER:  3:20-cr-0262-01 (RAM)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature  _____   Date  _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

Judgment—Page __6__ of __8__

DEFENDANT: Francisco Xavier Ortiz-Colon
CASE NUMBER: 3:20-cr-0262-01 (RAM)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall consent to the installation of computer monitoring software and/or systems that will enable the Probation Office, or its designee, to monitor and filter any internet accessing and data storage devices, owned and/or controlled by the defendant. Accordingly, to ensure compliance with the computer monitoring condition, the defendant must allow the probation officer to conduct initial and periodic unannounced searches/examinations on any computers (as defined in 18 U.S.C. § 1030(e)(1)) and/or electronic devices, owned or controlled by the defendant, and subject to computer monitoring, prior to and after the installation of the monitoring software. These searches shall be conducted to determine whether the computer or device contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. Such examinations may result in retrieval and copying of all data from the device and any internal or external peripherals and may involve removal of such equipment for the purpose of conducting a more thorough inspection. Additionally, the defendant shall immediately notify the Probation Office upon registration for access to any website or internet service that allows for: communication with other users, uploading/downloading of files, posting of any material, etc. Notification shall include the site address, username, passwords, pseudonyms and logons. This includes, but is not limited to, social networks, cloud storage services, message boards, etc. The defendant must warn any other people who use his computers or electronic devices that they may be subject to searches pursuant to this condition. Failure to consent may be grounds for revocation. The defendant shall pay for the cost of the monitoring service at the prevailing rate.

5. The defendant shall not engage in a specified occupation, business, or profession bearing a reasonable direct relationship to the conduct constituting the offense. Specifically, the defendant shall not work with persons under the age of 18, or hold a job that gives him authority over and/or access to potential victims. The only exception relies in the incidental contact in normal commercial life. Any employment must be notified in advance; the Probation Officer will make an assessment of the job placement and set employment restrictions based on the Sex Offender Management Procedures Manual. The defendant shall consent to third party disclosure to any employer or potential employer.

6. The defendant shall not participate in any volunteer activity or be involved in any children's or youth organization or any group that would bring him into close contact with a person or persons under the age of 18, without prior approval of the U.S. Probation Officer.

7. The defendant shall cooperate in the collection of a DNA sample as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

8. The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. Sec. 16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state, U.S. Territory or Indian Tribe, sex offender registration agency in which he resides, works, is a student, carry on a vacation, or was convicted of a qualifying offense.

9. The defendant shall be required to submit to an initial polygraph examination and subsequent maintenance testing intervals to be determined by the probation office to assist in treatment planning, case monitoring and with the requirements of his supervision or treatment program. Polygraph tests will be conducted at least once annually; however, they may be conducted on a continuous basis commensurate with risk as determined by the U.S. Probation Office.

10. The defendant shall submit his person, property, house, vehicle, papers, computers (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic communication or data storage devices, and media, to a search conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

11. The defendant shall undergo a sex-offense-specific evaluation and/or participate in a sex offender treatment/and or mental health treatment program arranged by the United States Probation Officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s) and any testing as approved by the Court. The defendant shall waive his right of confidentiality in any records for mental health assessment and treatment, and sign any necessary release form required to obtain such records to allow the U.S. Probation Officer to review and adjust defendant's course of treatment and progress with the treatment provider. The defendant will be required to contribute to the costs of services rendered, by means of co-payment, based on his ability to pay or availability of third-party payment.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page <u>   7   </u> of <u>   8   </u>

DEFENDANT: Francisco Xavier Ortiz-Colon
CASE NUMBER: 3:20-cr-0262-01 (RAM)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | <u>Assessment</u> | <u>Restitution</u> | <u>Fine</u> | <u>AVAA Assessment*</u> | <u>JVTA Assessment**</u> |
|---|---|---|---|---|---|
| **TOTALS** | $ 1,900.00 | $ | $ | $ | $ 5,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ 0.00 | $ _____ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___8___ of ___8___

DEFENDANT:  Francisco Xavier Ortiz-Colon
CASE NUMBER:  3:20-cr-0262-01 (RAM)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑   Lump sum payment of $ __6,900.00__ due immediately, balance due

☐   not later than _____ , or
☐   in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C** ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
_____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

**E** ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
*Plaintiff*,

v                                                     CRIMINAL NO.  20-262(RAM)

FRANCISCO X. ORTIZ-COLON,
*Defendant*.

### NOTICE OF APPEAL

TO THE HONORABLE COURT:

Notice is hereby given by *Mr. Francisco Ortiz-Colon*, the defendant herein, that he respectfully appeals to the United States Court of Appeals for the First Circuit from the JUDGMENT entered on May 23rd, 2023, before Hon. Raul Arias Marxuach, United States District Judge for the District Court of Puerto Rico. Attached herein is the Form for Selection of Counsel on Appeal, where Mr. Ortiz-Colon respectfully requests that the Court appoint a new counsel to represent him.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 30th day of May, 2023.

*S/Melanie Carrillo Jiménez*
Melanie Carrillo-Jiménez
USDC-PR 225107
PO BOX 194254
San Juan, P.R. 00919-4254
(787) 630-2848/ (787) 946-9046
E-mail: melaniecarrilloj@gmail.com

AD-9

```
 1        From on or about March 3, 2020 through on or about
 2   March 15, 2020, in the District of Puerto Rico and within the
 3   jurisdiction of this Court, the Defendant, Francisco Xavier
 4   Ortiz-Colon, did knowingly employ, use, persuade, induce,
 5   entice and coerce 15-year-old female with initials ASR, to
 6   engage in sexual explicit conduct for the purpose of
 7   producing a visual depiction of such conduct using materials
 8   that were mailed, shipped and transported in and affecting
 9   interstate or foreign commerce by any means including by
10   computer.  All in violation of Title 18, United States Code,
11   Section 2251(a) and (e).
12        So that is the superseding indictment.
13        Jury Instruction Number 17, Elements of Production of
14   Child Pornography, Title 18, United States Code, Section
15   2251(a).
16        In Counts 1, 4, 6, 7, 9, 11, 15, 17 and 19 of the
17   superseding indictment, the Defendant is charged with
18   production of child pornography.  The Defendant is accused of
19   knowingly employing, using, persuading, inducing, enticing or
20   coercing a minor to engage in sexually explicit conduct for
21   the purpose of producing or transmitting any visual depiction
22   of such conduct and actually producing or transmitting such
23   visual depiction using a means or facility of interstate or
24   foreign commerce or in and affecting interstate or foreign
25   commerce
```

```
 1        In order to find the Defendant guilty of this offense,

 2   you must find that the Government proved each of the

 3   following three elements beyond a reasonable doubt:

 4        First:  That on or about the date charged,

 5   Mr. Ortiz-Colon knowingly employed, used, persuaded, induced,

 6   enticed or coerced a minor to engage in sexually explicit

 7   conduct.

 8        Second:  That Mr. Ortiz-Colon did so for the purpose of

 9   producing or transporting a visual depiction of such conduct

10   and,

11        Third:  That the visual depiction was actually produced

12   or transmitted using a means or facility of interstate or

13   foreign commerce or in or affecting interstate or foreign

14   commerce.

15        "Knowingly" means that the act was done voluntarily or

16   intentionally and not because of mistake or accident.

17        Sexually explicit conduct includes but is not limited

18   the lascivious exhibition of the genitals or pubic area of

19   any person.  Whether an image of the genitals or pubic area

20   constitutes a lascivious exhibition requires consideration of

21   the overall content of the material.

22        In considering the overall content of the image you may

23   or not required to consider the following factors:

24        Whether the genitals or pubic area are the focal point

25   of the image,
```

AD-11

1        Whether the setting of the image is sexually suggestive,

2   for example, a location generally associated with sexual

3   activity,

4        Whether the child is depicted in an unnatural pose or

5   inappropriate attire considering the age of the child,

6        Whether the child is fully or partially clothed or nude,

7        Whether the image suggests sexual coyness or a

8   willingness to engage in sexual activity,

9        Whether the image appears intended or designed to elicit

10  a sexual response from the viewer and images may not involve

11  all of these factors to constitute a lascivious exhibition.

12  It is for you to decide the weight or lack of weight to be

13  given to any of the factors I just listed.  This list of

14  factors is not comprehensive and you may consider other

15  factors specific to this case that you may find relevant.

16       A visual depiction includes data which is capable of

17  conversion into a visual image that has been transmitted by

18  any means whether or not stored in a permanent format.

19       Interstate commerce includes commerce between one state,

20  territory, possession or the District of Colombia and or

21  another state, territory, possession and the District of

22  Colombia.

23       Foreign commerce includes commerce with a foreign

24  country.

25       A visual depiction that has been transmitted using a

1    means and facility of interstate and foreign commerce and in

2    and affecting interstate and foreign commerce if it has been

3    transmitted over the Internet or over telephone lines.

4        A visual depiction has equally been transmitted using a

5    means and facility of interstate and foreign commerce and in

6    and affecting interstate and foreign commerce if it passes

7    between one state, territory, possession or the District of

8    Colombia and another state, territory, possession and the

9    District of Colombia.

10       **Jury Instruction Number 18, Elements of the Coercion and**

11   **Enticement of a Minor, Title 18, United States Code, Section**

12   **2422(b).**

13       In Counts 2, 3, 5, 8, 10, 14, 16 and 18 of the

14   superseding indictment, the Defendant is charged with

15   coercion and enticement of a minor.

16       The Defendant is accused of using a facility or means of

17   interstate or foreign commerce to persuade, induce, entice

18   and coerce someone under age 18 to engage in sexual activity

19   for which a person can be charged with a criminal offense.

20   It is against federal law to engage in such conduct.

21       In order to find Defendant guilty of this offense, you

22   must find that the Government proved each of the following

23   four elements beyond a reasonable doubt:

24       First, that on or about the date charged,

25   Mr. Ortiz-Colon knowingly persuaded, induced enticed and

AD-13

1  coerced a person in question to engage in criminal activity.

2      Second, that he did so by using a facility or means of

3  interstate or foreign commerce.

4      Third, that the person at the time was less than 18

5  years old.

6      fourth, that the sexual activity was a criminal offense.

7      Sexual activity includes the production of sexually

8  explicit images of minors.  The production of sexually

9  explicit images of minors is a criminal offense.

10     "Knowingly" means that the act was done voluntarily and

11 intentionally and not because of mistake or accident.

12     Interstate commerce includes commerce between one state,

13 territory, possession or the District Colombia and another

14 state, territory, possession and the District of Colombia.

15     The telephone and Internet are considered facilities or

16 means of interstate commerce.  Foreign commerce includes

17 commerce with a foreign country.

18     **Jury Instruction Number 19, Elements or Receipt of Child**

19 **Pornography, Title 18, United States Code, Section**

20 **2252A(a)(2).**

21     in Count 12 of the superseding indictment, the Defendant

22 is accused of receipt of child pornography.  In order to find

23 Defendant guilty of this offense, you must find that the

24 Government proved each of the following four elements beyond

25 a reasonable doubt."

AD-14

1        First, the Defendant knowingly received the material

2   identified in the indictment.

3        Second, the material identified in the indictment is

4   child pornography.

5        Third, the Defendant knew both that the material

6   depicted one or more minors and that the minors were engaged

7   sexually explicit conduct.

8        Fourth, the material identified in the indictment was

9   shipped or transported using a means or facility of

10  interstate or foreign commerce shipped or transported in or

11  affecting interstate or foreign commerce by any means

12  including by computer.

13       "Knowingly" means that the act was done voluntarily and

14  intentionally and not because of mistake or accident.

15  Interstate commerce includes commerce between one state,

16  territory, possession or the District of Colombia, or another

17  state, territory, possession and the District of Colombia.

18  Foreign commerce includes commerce with a foreign country.

19       A visual depiction has been transmitted using a means

20  and facility of interstate and foreign commerce and in and

21  affecting interstate and foreign commerce if it has been

22  transmitted over the Internet or over telephone lines.

23       A visual depiction has equally been transmitted using a

24  means and facility of interstate and foreign commerce and in

25  and affecting interstate and foreign commerce if it passes

AD-15

1  between one state, territory, possession or the District of

2  Colombia and another state, territory, possession and the

3  District of Colombia.

4      **Jury Instruction Number 20, Elements of Possession of**

5  **Child Pornography.  Title 18 United States Code Section**

6  **2252(a)(a)(5)(B).**

7      In Count 13 of the superseding indictment, the Defendant

8  is charged with possession of child pornography.  The

9  Defendant is accused of knowingly possessing child

10  pornography that has moved in affecting or for interstate or

11  foreign commerce.  It is against federal law to possess child

12  pornography that has moved in interstate or foreign commerce.

13  In order to find defendant guilty of this offense, you must

14  find that the Government proved each of the following

15  elements beyond a reasonable doubt.

16      First, that Mr. Ortiz Colon knowingly possessed mobile

17  phones,

18      Second, that the phones contained at least one image of

19  child pornography

20      Third, that Mr. Ortiz Colon knew that the phones

21  contained an image of child pornography.

22      Fourth, that the image of child pornography had been

23  shipped or transported using a means or facility of

24  interstate or foreign commerce, shipped or transported in or

25  affecting interstate or foreign commerce by any means

1   including by computer.

2        If you find that the Defendant possessed fewer than

3   three images of child pornography and promptly and in good

4   faith took reasonable steps to destroy each such image and

5   did not retain the image and did not allow any person to or

6   report to law enforcement agency and provided that law

7   enforcement agency access to each such image, then you shall

8   find the Defendant not guilty.

9        It is the Government's burden to' prove beyond a

10  reasonable doubt all the elements I listed previously and, in

11  addition, that Defendant's possession does not fit within the

12  rule I have just described.

13       "Knowingly" means that the act was done voluntarily and

14  intentionally and not because of mistake or accident.

15       "Possess" means to exercise authority, dominion or

16  control over something.  The law recognizes different kinds

17  of possession.  Possession includes both actual and

18  constructive possession.

19       A person who has direct physical control of something on

20  or around her person is then in actual possession of it.

21       A person who is not in actual possession but who has

22  both the power and intention to exercise control over

23  something is in constructive possession of it.

24       Whenever I use the term "possession" in these

25  instructions, I mean actual as well as constructive

1    possession.

2        Possession also includes both sole possession and joint

3    possession.

4        If one person alone has actual or constructive

5    possession, possession is sole.  If two or more persons share

6    actual or constructive possession, possession is joint.

7        Whenever I have used the word "possession" in these

8    instructions, I mean joint as well as sole possession

9        Child pornography is any photograph, film, video,

10   picture, computer image, computer generated image of sexually

11   explicit conduct that was produced by using an actual person

12   under the age of 18 engaging in sexually explicit conduct.

13       Sexually explicit conduct includes any of the following

14   five categories of conduct whether actual or simulated:

15   Sexual intercourse, including genital/genital, oral/genital,

16   anal/genital or oral/anal, whether between persons of the

17   same or opposite sex, beastiality, masturbation, sadistic or

18   masochistic abuse or lascivious exhibition of the genital or

19   pubic area of any person.

20       Whether an image of the genitals or pubic area

21   constitutes a lascivious exhibition requires consideration of

22   the overall content of the material.

23       In considering the overall consent of an image, you may

24   but are not required to consider the following factors:

25       Whether the genitals or pubic area are the focal point

AD-18

1   of the image.

2        Whether the setting of the image is sexually suggestive.

3   For example:  A location generally associated with sexual

4   activity; whether the child is depicted in an unnatural pose

5   or inappropriate attire considering the age of the child;

6   whether the child is fully or partially closed or nude;

7   whether the image suggests sexual coyness or a willingness to

8   engage in sexual activity; whether the image appears intended

9   or designed to elicit a sexual response from the viewer.

10        An image need not involve all of these factors to

11   constitute a lascivious exhibition.  It is for you to decide

12   the weight or lack of weight to be given to any of the

13   factors I just listed.  You may conclude that they are not

14   applicable given the facts of this case.  This list of

15   factors is not comprehensive and you may consider other

16   factors specific to this case that you find relevant.

17        An image has been shipped or transported in interstate

18   or foreign commerce if it has been transmitted over the

19   Internet or over telephone lines.

20        **Jury Instruction Number 21, Knowingly and Willfully**

21   **Defined.**

22        The word knowingly, as that word has been used from time

23   to time in these instructions means that the act was done

24   voluntarily and intentionally and not because of mistake or

25   accident.

RECEIVED AND FILED

CLERK'S OFFICE USDC PR

2021 APR 14 PM 1:19

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **SUPERSEDING INDICTMENT** |
| | Criminal No. 20-262 (RAM) |
| v. | Violations:<br>18 U.S.C. § 2251(a) and (e)<br>18 U.S.C. § 2252A(a)(2) |
| **FRANCISCO XAVIER ORTIZ COLON**<br>Defendant. | 18 U.S.C. § 2252A(a)(5)(B)<br>18 U.S.C. § 2422(b)(2) |
| | (Nineteen Counts and Forfeiture Allegation) |

**THE GRAND JURY CHARGES:**

### COUNT ONE
**Production of Child Pornography**
(Title 18, United States Code, Section 2251(a))

From in or about August, 2019 through in or about October, 2019, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

**FRANCISCO XAVIER ORTIZ COLON,**

did knowingly employ, use, persuade, induce, entice and coerce a twelve (12) year-old female with initials KMC, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and the visual depiction was produced and transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce. All in violation of Title 18, United States Code, Section 2251(a) and (e).

AD-20

## COUNT TWO
**Coercion and Enticement of a Minor**
(Title 18, United States Code, Section 2422(b)(2))

From in or about August, 2019 through in or about October, 2019, in the District of Puerto

Rico and within the jurisdiction of this court, the defendant,

## FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not

manufactured in Puerto Rico, as well as internet instant messaging services and social media, to

knowingly persuade, induce, entice, and coerce a minor, that is, a twelve (12) year-old female with

initials KMC, to engage in sexual activity, and to engage in sexually explicit conduct for the

purpose of producing any visual depiction of such conduct, for which the defendant could be

charged with a criminal offense under the laws of the United States of America and Puerto Rico.

All in violation of Title 18, United States Code, Section 2422(b)(2).


## COUNT THREE
**Coercion and Enticement of a Minor**
(Title 18, United States Code, Section 2422(b)(2))

From on or about February 28, 2020 through on or about March 3, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

## FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not

manufactured in Puerto Rico, as well as internet instant messaging services and social media, to

AD-21

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 3 of 14

knowingly persuade, induce, entice, and coerce a minor, that is, an eleven (11) year-old female

with initials APR, to engage in sexual activity, and to engage in sexually explicit conduct for the

purpose of producing any visual depiction of such conduct, for which the defendant could be

charged with a criminal offense under the laws of the United States of America and Puerto Rico.

All in violation of Title 18, United States Code, Section 2422(b)(2).

**COUNT FOUR**
**Production of Child Pornography**
(Title 18, United States Code, Section 2251(a))

From on or about February 28, 2020 through on or about March 3, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

**FRANCISCO XAVIER ORTIZ COLON,**

did knowingly employ, use, persuade, induce, entice and coerce an eleven (11) year-old female

with initials APR to engage in sexually explicit conduct for the purpose of producing a visual

depiction of such conduct, using materials that were mailed, shipped and transported in and

affecting interstate and foreign commerce by any means including by computer. All in violation

of Title 18, United States Code, Section 2251(a) and (e).

AD-22

## COUNT FIVE
### Coercion and Enticement of a Minor
(Title 18, United States Code, Section 2422(b)(2))

From on or about April 16, 2020 through on or about May 9, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not manufactured in Puerto Rico, as well as internet instant messaging services and social media, to knowingly persuade, induce, entice, and coerce a minor, that is, a fourteen (14) year-old female with initials DAR, to engage in sexual activity, and to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, for which the defendant could be charged with a criminal offense under the laws of the United States of America and Puerto Rico. All in violation of Title 18, United States Code, Section 2422(b)(2).

## COUNT SIX
### Production of Child Pornography
(Title 18, United States Code, Section 2251(a))

From on or about April 16, 2020 through on or about May 9, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did knowingly employ, use, persuade, induce, entice and coerce a fourteen (14) year-old female with initials DAR, to engage in sexually explicit conduct for the purpose of producing a visual

depiction of such conduct, using materials that were mailed, shipped and transported in and affecting interstate and foreign commerce by any means including by computer. All in violation of Title 18, United States Code, Section 2251(a) and (e).

## COUNT SEVEN
### Production of Child Pornography
(Title 18, United States Code, Section 2251(a))

From on or about April 16, 2020 through on or about May 9, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

**FRANCISCO XAVIER ORTIZ COLON,**

did knowingly employ, use, persuade, induce, entice and coerce a nine (9) year-old female with initials AMR, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, using materials that were mailed, shipped and transported in and affecting interstate and foreign commerce by any means including by computer. All in violation of Title 18, United States Code, Section 2251(a) and (e).

AD-24

## COUNT EIGHT
**Coercion and Enticement of a Minor**
(Title 18, <u>United States Code</u>, Section 2422(b)(2))

From on or about March 4, 2020 through on or about March 9, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not

manufactured in Puerto Rico, as well as internet instant messaging services and social media, to

knowingly persuade, induce, entice, and coerce a minor, that is, a fourteen (14) year-old female

with initials ACM, to engage in sexual activity, and to engage in sexually explicit conduct for the

purpose of producing any visual depiction of such conduct, for which the defendant could be

charged with a criminal offense under the laws of the United States of America and Puerto Rico.

All in violation of Title 18, <u>United States Code</u>, Section 2422(b)(2).

## COUNT NINE
**Production of Child Pornography**
(Title 18, <u>United States Code</u>, Section 2251(a))

From on or about March 4, 2020 through on or about March 9, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did knowingly employ, use, persuade, induce, entice and coerce a fourteen (14) year-old female

with initials ACM, to engage in sexually explicit conduct for the purpose of producing a visual

AD-25

depiction of such conduct, using materials that were mailed, shipped and transported in and affecting interstate and foreign commerce by any means including by computer. All in violation of Title 18, United States Code, Section 2251(a) and (e).

### COUNT TEN
**Coercion and Enticement of a Minor**
(Title 18, United States Code, Section 2422(b)(2))

On or about January, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not manufactured in Puerto Rico, as well as internet instant messaging services and social media, to knowingly persuade, induce, entice, and coerce a minor, that is, a twelve (12) year-old female with initials KDR, to engage in sexual activity, and to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, for which the defendant could be charged with a criminal offense under the laws of the United States of America and Puerto Rico. All in violation of Title 18, United States Code, Section 2422(b)(2).

7

AD-26

## COUNT ELEVEN
**Production of Child Pornography**
(Title 18, <u>United States Code</u>, Section 2251(a))

In or about January, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

**FRANCISCO XAVIER ORTIZ COLON,**

did knowingly employ, use, persuade, induce, entice and coerce a twelve (12) year-old female with initials KDR, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, using materials that were mailed, shipped and transported in and affecting interstate and foreign commerce by any means including by computer. All in violation of Title 18, <u>United States Code</u>, Section 2251(a) and (e).

## COUNT TWELVE
**Receipt of Child Pornography**
(Title 18, <u>United States Code</u>, Section 2252A(a)(2))

From in or about August, 2019 through in or about May, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

**FRANCISCO XAVIER ORTIZ COLON,**

did knowingly receive child pornography, as defined in Title 18, <u>United States Code</u>, Section 2256(8), using any means and facility of interstate and foreign commerce and that has been mailed, shipped and transported in or affecting interstate and foreign commerce, by any means, including by computer, that is: the defendant received images depicting actual minor females engaged in

8

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 9 of 14

sexually explicit conduct via internet instant messaging services and social media messages using

his cellular phones, which were manufactured outside of Puerto Rico. All in violation of Title 18,

United States Code, Section 2252A(a)(2).


### COUNT THIRTEEN
**Possession of Child Pornography**
(Title 18, United States Code, Section 2252A(a)(5)(B))

From in or about August, 2019 through on or about June 10, 2020, in the District of Puerto

Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

knowingly possessed at least one matter containing one or more images of child pornography, as

defined in Title 18, United States Code, Section 2256(8), including images of a prepubescent minor

or a minor who has not attained twelve (12) years of age, such child pornography having been

shipped and transported using a means and facility of interstate and foreign commerce, and in or

affecting interstate and foreign commerce, and having been produced using materials which had

been mailed and so shipped and transported, by any means, including by computer, that is: the

defendant possessed still images depicting minors engaged in sexually explicit conduct on his

cellular phones. All in violation of Title 18, United States Code, Section 2252A(a)(5)(B).

9

AD-28

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 10 of 14

## COUNT FOURTEEN
### Coercion and Enticement of a Minor
(Title 18, United States Code, Section 2422(b)(2))

From on or about March 10, 2020 through on or about April 11, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not manufactured in Puerto Rico, as well as internet instant messaging services and social media, to knowingly persuade, induce, entice, and coerce a minor, that is, an eleven (11) year-old female with initials CAR, to engage in sexual activity, and to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, for which the defendant could be charged with a criminal offense under the laws of the United States of America and Puerto Rico. All in violation of Title 18, United States Code, Section 2422(b)(2).

## COUNT FIFTEEN
### Production of Child Pornography
(Title 18, United States Code, Section 2251(a))

From on or about March 10, 2020 through on or about April 11, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did knowingly employ, use, persuade, induce, entice and coerce an eleven (11) year-old female with initials CAR, to engage in sexually explicit conduct for the purpose of producing a visual

10

AD-29

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 11 of 14

depiction of such conduct, using materials that were mailed, shipped and transported in and affecting interstate and foreign commerce by any means including by computer. All in violation of Title 18, United States Code, Section 2251(a) and (e).

## COUNT SIXTEEN
### Coercion and Enticement of a Minor
(Title 18, United States Code, Section 2422(b)(2))

From on or about February 27, 2020 through on or about April 15, 2020, in the District of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not manufactured in Puerto Rico, as well as internet instant messaging services and social media, to knowingly persuade, induce, entice, and coerce a minor, that is, an thirteen (13) year-old female with initials VOM, to engage in sexual activity, and to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, for which the defendant could be charged with a criminal offense under the laws of the United States of America and Puerto Rico. All in violation of Title 18, United States Code, Section 2422(b)(2).

11

AD-30

## COUNT SEVENTEEN
### Production of Child Pornography
(Title 18, <u>United States Code</u>, Section 2251(a))

From on or about February 27, 2020 through on or about April 15, 20200, in the District

of Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did knowingly employ, use, persuade, induce, entice and coerce an thirteen (13) year-old female

with initials VOM, to engage in sexually explicit conduct for the purpose of producing a visual

depiction of such conduct, using materials that were mailed, shipped and transported in and

affecting interstate and foreign commerce by any means including by computer. All in violation

of Title 18, <u>United States Code</u>, Section 2251(a) and (e).

## COUNT EIGHTEEN
### Coercion and Enticement of a Minor
(Title 18, <u>United States Code</u>, Section 2422(b)(2))

From on or about March 3, 2020 through on or about March 15, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did use a facility and means of interstate commerce, that is a cellular phone that was not

manufactured in Puerto Rico, as well as internet instant messaging services and social media, to

knowingly persuade, induce, entice, and coerce a minor, that is, a fifteen (15) year-old female with

12

AD-31

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 13 of 14

initials ASR, to engage in sexual activity, and to engage in sexually explicit conduct for the purpose

of producing any visual depiction of such conduct, for which the defendant could be charged with

a criminal offense under the laws of the United States of America and Puerto Rico. All in violation

of Title 18, United States Code, Section 2422(b)(2).

## COUNT NINETEEN
### Production of Child Pornography
(Title 18, United States Code, Section 2251(a))

From on or about March 3, 2020 through on or about March 15, 2020, in the District of

Puerto Rico and within the jurisdiction of this court, the defendant,

### FRANCISCO XAVIER ORTIZ COLON,

did knowingly employ, use, persuade, induce, entice and coerce fifteen (15) year-old female with

initials ASR, to engage in sexually explicit conduct for the purpose of producing a visual depiction

of such conduct, using materials that were mailed, shipped and transported in and affecting

interstate and foreign commerce by any means including by computer. All in violation of Title 18,

United States Code, Section 2251(a) and (e).

13

AD-32

*United States v. Francisco Xavier Ortiz Colon*
Indictment – Page 14 of 14

## FORFEITURE ALLEGATION

The allegations of this Indictment are re-alleged as if fully set forth herein, for the purpose of alleging forfeiture, pursuant to Title 18, United States Code, Section 2253.

If convicted of the offenses set forth above, **FRANCISCO XAVIER ORTIZ COLON**, the defendant herein, shall forfeit to the United States any and all materials or property used or intended to be used in the production, possession, receipt, distribution, or transportation of child pornography. Such property includes, but is not limited to the following items found in his possession on June 10, 2020: a Samsung cellphone, Model: SM-S260 DL, IMEI: 353689105696549, S/N: RF8M61QBADB and LG cellphone, Model: LML413DL, S/N: 804VTFW0145523. All pursuant to Title 18, United States Code, Section 2253.

W. STEPHEN MULDROW
United States Attorney

TRUE BILL,

Timothy R. Henwood
Chief, Criminal Division

Foreperson
Date: *April 14, 2021*

Jenifer Y. Hernández-Vega
Assistant U.S. Attorney

14

AD-33